UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
(Civil Division)

**FILED**

JAN 1 7 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| DMJM + Harris, Inc.<br>605 Third Avenue<br>New York, New York 10158 | * <br> * <br> * <br> * |
|       Plaintiff | * <br> * |
| v. | * <br> * |
| Government Intelligence and<br>Proposal Resources, Inc.<br>47097 Glenaire Court<br>Sterling, Virginia 20165 | * <br> * <br> * <br> * <br> * |

|  |  |
|---|---|
| Serve Corporate Officer:<br>Christopher Stahl, President<br>47097 Glenaire Court<br>Sterling, Virginia 20165 | Case: 1:08-cv-00094<br>Assigned To : Leon, Richard J.<br>Assign. Date : 1/17/2008<br>Description: Contract |

and

The Guam Telephone Authority
TeleGuam
624 N. Marine Corps Drive
Tamuning, Guam 96911

      Serve:
      Marcel G. Camacho
      Office of the Governor of Guam
      Suite 1B, Orlean Pacific Plaza
      851 S. Marine Corps Drive
      Tamuning, Guam 96913

      -or-

      Vincent Arriola, General Manage
      624 N. Marine Corps Drive
      Tamuning, Guam 96911

**Defendants**       *    Civil Action No.:

1

\*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

NOW COMES, DMJM + Harris, Inc., Plaintiff, by and through its attorneys, Sidney S. Friedman, Rosemary E. Allulis, and Weinstock, Friedman & Friedman, P.A., and herein sues the Defendants, Government Intelligence and Proposal Resources, Inc. and The Guam Telephone Authority, and for good cause states as follows:

## JURISDICTION

1.      Jurisdiction is founded on Diversity of Citizenship and Amount in Controversy.

2.      Plaintiff is a New York corporation with its principal place of business located in New York, New York.

3.      Plaintiff was formerly Frederic R. Harris, Inc., owned by AECOM, Inc., which was located in Los Angeles, California.

4.      Frederic R. Harris, Inc., merged with its sister corporation, DMJM, also owned by AECOM, and subsequently became DMJM + Harris, Inc. (hereinafter "DMJM").

5.      Defendant Government Intelligence and Proposal Resources, Inc. is a corporation with its principal place of business located in Sterling, Virginia.

6.      Defendant The Guam Telephone Authority/Guam TeleGuam is a telephone services company located in the territory of Guam.

7.      This matter arises out of contracts for the provision of professional services by Plaintiff, to Defendant Government Intelligence and Proposal Resources, Inc. (hereinafter

2

"GIPR") on behalf of The Guam Telephone Authority (hereinafter "GTA").

8.    The two contracts at issue contain arbitration clauses, however, they also contain provisions whereby Plaintiff may file suit.

9.    Pursuant to contract terms, jurisdiction and choice of laws is founded in the District of Columbia.

10.    Arbitration is pending, however, Plaintiff desires to preserve its right to pursue this matter through court litigation.

11.    The matter in controversy exceeds $75,000.00, exclusive of interest and costs, as is required by 28 U.S.C. § 1332.

**COUNT I**

**Breach of Contract**

12.    Plaintiff realleges and fully incorporates by reference, Paragraphs one through eleven as are set forth above.

13.    Pursuant to a services agreement between DMJM and GIPR, DMJM performed various services as a subcontractor of GIPR, for the benefit of GTA. A copy of the Contract between DMJM and GIPR is attached as Exhibit 1 and is prayed to be made a part hereof.

14.    GIPR had a contract with GTA to provide assistance in its efforts to privatize the Guam Telephone Authority. Pursuant to the contract between GIPR and GTA, Claimant was a recognized subcontractor, with the right to pursue payment for services rendered. A copy of the Contract between GIPR and GTA is attached as Exhibit 2 and is prayed to be made a part hereof.

15.    In accordance with the contracts and the corresponding scope of work, DMJM

3

performed environmental due diligence for properties owned by GTA, and fully performed under the terms of the Contract.

16.     DMJM incurred both professional fees for services rendered, as well as actual costs and expenses associated with its work.

17.     All work was completed at the request of GIPR and for the benefit of GTA, and was performed in accordance with the contracts between the parties.  DMJM was to be paid following the completion of the GTA privatization.

18.     Although privatization was finalized, DMJM was not thereafter paid by either GIPR or GTA, in material breach of the contracts between the parties.

19.     As a result of the breach of contracts by GIPR and GTA, Plaintiff DMJM has suffered damages.

20.     There remains a balance due and owing of $79,596.82, plus interest and attorneys fees, for a total claim of $126,751.43.

21.     Despite demand, both GIPR and GTA refuse to pay and have continued to pay in further breach of contract.


WHEREFORE, DMJM + Harris, Inc., Plaintiff, demands judgment in its favor and against the Defendants, Government Intelligence and Proposal Resources, Inc. and The Guam Telephone Authority, jointly and severally, in the amount of One Hundred Twenty-Six Seven Hundred Fifty-One Dollars and Forty-Three Cents.


Respectfully submitted,

4

_____
Sidney S. Friedman
D.C. Federal Bar No.: 464753

Rosemary E. Allulis
Federal Bar No.: 26625

Weinstock, Friedman & Friedman, P.A.
4 Reservoir Circle
Baltimore, Maryland 21208
(410) 559-9000
(410) 559-9009 Fax
ssf@weinstocklegal.com

**CIVIL COVER SHEET**

08 - 0094
RJL

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**

DMJM + Harris, Inc.
605 Third Avenue
New York, New York 10158

**DEFENDANTS**

Government Intelligence and Proposal Resources, Inc., 47097 Glenaire Court, Sterling, Virginia 20165
and
The Guam Telephone Authority/TeleGuam, 624 N. Marine Corps Drive, Tamuning, Guam 96911

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** ____88888____
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Sidney S. Friedman
Weinstock, Friedman & Friedman, P.A.
4 Reservoir Circle
Baltimore, Maryland 21208
410-559-9000 vc  410-559-9009 fax

Case: 1:08-cv-00094
Assigned To : Leon, Richard J.
Assign. Date : 1/17/2008
Description: Contract

**II. BASIS OF JURISDICTION**

(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

○ 2 U.S. Government Defendant

○ 3 Federal Question (U.S. Government Not a Party)

◉ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ◉ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ◉ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**  OR  ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (If not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ⊙ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

The matter in controversy exceeds $75,000.00, exclusive of interest and costs, as is required by 28 U.S.C. § 1332.  Breach of contract.

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ $126,751.43 | Check YES only if demanded in complaint |
|---|---|---|---|
| | | **JURY DEMAND:** | YES ☐    NO ☒ |

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE  1/15/2008        SIGNATURE OF ATTORNEY OF RECORD    *Sidney J. Freedman*

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

09-2354-48

.21-7110- disc-

# SERVICES AGREEMENT BETWEEN
# FREDERIC R HARRIS, INC.
## AND
# GOVERNMENT INTELLIGENCE AND PROPOSAL RESOURCES, INC.

This Agreement is made as of October 4, 2000 ("Effective Date"), by and between Frederic R. Harris (FRHARRIS), a corporation with a principal place of business at 2751 Prosperity Rd. Suite 300, Fairfax, VA 22031, and Government Intelligence and Proposal Resources, Inc., ("GIPR"), a corporation organized under the laws of Florida and having a place of business at 47097 Glenaire Ct. Sterling, VA 20165.

**WHEREAS**, GIPR has a Contract with the Guam Telephone Authority (GTA) on Guam known as the Procurement Advisor which provides the GTA with assistance in their efforts to Privatize the GTA; and

**WHEREAS**, the GTA desires to complete through GIPR an initial due diligence analysis of its environmental status relative to potential issues; and

**WHEREAS**, FRHARRIS desires to provide this analysis for the GTA.

**NOW, THEREFORE**, for the mutual promises set forth herein and for other good and adequate consideration, the sufficiency of which is hereby acknowledged, FRHARRIS and GIPR, intending to be bound, agree as follows:

## 1. PURPOSE

FRHARRIS will provide the services identified in Attachment A to the GTA beginning no later than October 16, 2000 and completing prior to December 4, 2000.

## 2 FEES

FRHARRIS will be reimbursed for professional fees as identified in Attachment B within 10 days upon closing of the sale of the GTA or upon termination of the privatization process by the GTA. For the purpose of this Agreement, employees of FRHARRIS' affiliated companies shall be considered employees of FRHARRIS. Any corporation wholly owned by FRHARRIS' ultimate parent company is a FRHARRIS affiliated company.

## 3. EXPENSES

GIPR shall reimburse FRHARRIS upon receipt of an FRHARRIS invoice detailing such expenses for reasonable and actual expenses incurred by FRHARRIS in connection with the provision of services, including such expenses as transportation, lodging, meals, communications and other out of pocket expenses in accordance with Guam per diem policies. Such expenses shall be provided to FRHARRIS after receipt of it from the GTA.

FRHARRIS will be reimbursed for miscellaneous expenses as identified in Attachment B upon receipt of an FRHARRIS invoice detailing such expenses

TRACY - GUAM DESK
LASSITER

SCANNED

EXHIBIT
1
ALL-STATE LEGAL®

including receipts. Such expenses shall be provided to FRHARRIS after receipt of same from the GTA.

## 4. GROSS RECEIPTS TAX

FRHARRIS may be assessed the Government of Guam Gross Receipts Tax of four percent (4%) of professional fees. Reimbursement to FRHARRIS of any assessed Gross Receipt Tax will be negotiated by GIPR with the GTA. It is intended that the Gross Receipts Tax will not be assessed.

## 5. INDEMNIFICAION

Each party to this Agreement shall indemnify and hold harmless the other party from any and all loss, damage, expense or cost (including reasonable attorney's fees and disbursements attendant thereto) arising out of or in any way connected with the indemnifying party's breach of any term of this Agreement or, in the case of GIPR, the PA Agreement. Each party further agrees to indemnify and hold the other party harmless against any and all liability, claims, and costs of whatever kind and nature for injury to or death of any person or persons and for loss or damage to any property occurring in connection with or in any way under the terms of this Agreement or, in the case of GIPR, the PA Agreement, to the extent resulting in whole or in part from the negligent act or omissions of the indemnifying party.

## 6. MONTHLY STATEMENTS

FRHARRIS will provide GIPR with statements that set out a detailed listing of FRHARRIS hourly professional fees and description of work completed, by professional, and expenses. These statements will be included by GIPR in the corresponding monthly statements that GIPR will submit to GTA, as contemplated in PA Contract.

## 7. COMPLIANCE WITH LAWS / INDEPENDENT CONTRACTOR

FRHARRIS and GIPR shall comply with all Federal and territorial laws and ordinances applicable to the work. In performance of this Agreement, each party shall act as an independent contractor and not as an agent of the other party. Neither party to this Agreement has the authority to bind the other party to any third party contractual or other obligation.

## 8. ACCESS TO RECORDS AND OTHER REVIEW

FRHARRIS shall maintain all books, documents, papers, accounting records and other evidence pertaining to costs incurred and to make such materials available at their respective offices at all reasonable times during the contract period and for three (3) years from the date of the final payment under the contract, for inspection by the Government of Guam and/or GIPR. All briefs, memoranda and other incidental FRHARRIS work or materials furnished hereunder shall upon full payment to FRHARRIS be and remain the property of the GTA, including all publication rights and copyright interests, and may be used by the GTA without any additional cost to the GTA.

SCANNED

## 9. DISPUTES

### 9.1 ARBITRATION

The parties will endeavor to settle amicably by mutual discussions any disputes, differences, or claims whatsoever related to this Agreement. Failing such amicable settlement, any controversy, claim, or dispute arising under or relating to this Agreement, including the existence, validity, interpretation, performance, termination or breach thereof, shall finally be settled by arbitration in accordance with the Arbitration Rules of the American Arbitration Association ("AAA"). There will be one (1) jointly appointed arbitrator (the "Arbitrator") The language of the arbitration shall be English and the hearing will be held in Washington, D.C. The Arbitrator will not have the authority to award punitive damages to either party. This Agreement will be enforceable, and any arbitration award will be final, and judgment thereon may be entered in any court of competent jurisdiction. Notwithstanding the foregoing, claims for preliminary injunctive relief, other pre-judgment remedies, and claims by FRHARRIS for GIPR's failure to pay FRHARRIS in accordance with this Agreement or enforce rights under the PA Contract affecting FRHARRIS may be brought in a state or federal court in the United States with jurisdiction over the subject matter and parties.

### 9.2 LIMITATION OF LIABILITY

Neither party to this Agreement shall be liable to the other party for indirect, consequential, expectancy or punitive damages.

## 10. TERMINATION

(a) Either of the parties hereto may, by written notice to the other, terminate this Agreement in whole or in part at any time, either for convenience or default.

(b) In the case of a termination for default, either party may terminate this Agreement if: the other party breaches any material term or condition of this Agreement and fails to cure such breach within thirty (30) days after receipt of written notice of the same, except in the case of failure to pay fees and reimbursable expenses when due, which must be cured within ten (10) business days after GIPR receipt of written notice from FRHARRIS.

(c) Upon termination for any reason, all documents, reports, summaries, completed work and work in progress, and such other information and materials as may have been accumulated by FRHARRIS in performing this Agreement shall, upon payment to FRHARRIS of amounts owing hereunder, became the property of and be delivered to the Government of Guam in the manner and to the extent determined by the GTA.

## 11. MISCELLANEOUS PROVISIONS

### 11.1 Severability. Any invalidity, in whole or in part, of any provision of this Agreement shall not affect the validity or enforceability of any other of its provisions.

### 11.2 Cumulation of Remedies. All remedies available to either party for breach or violation of this Agreement are cumulative and may be exercised concurrently or separately, and the exercise of any one remedy shall not be deemed an election of such

SCANNED

remedy to the exclusion of other remedies. The parties hereto agree that irreparable damage would occur in the event any provision of this Agreement was not performed in accordance with the terms hereof and that the parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy at law or in equity.

**11.3    Waiver.** A waiver, express or implied, by either party of any default by the other in the observance and performance of any of the covenants or duties set forth herein shall not constitute or be construed as a waiver of any subsequent or other default.

**11.4    Assignment.** Neither party shall assign the Agreement in whole or in part without the written consent of the other party.

**11.5    Notices.** Any notice or other communication hereunder shall be in writing and will be deemed to have been validly delivered by facsimile or courier and confirmed by registered or certified first class mail, return receipt requested, postage prepaid, addressed to the receiving party at the address set forth below its name or at such other address as such party may hereafter designate in writing to the other party.

  If to GIPR:

  GIPR, Inc.
  47097 Glenaire Court
  Sterling, VA  20165
  Attention:  Christopher Stahl

  If to FRHARRIS:

  FR Harris, Inc.
  2751 Prosperity Rd. Suite 300
  Fairfax, VA 22031
  Attention:  Greg Coleman

**11.6    Headings.**    The headings contained herein are for convenience only and shall not control the interpretation of any term or condition hereof.

**11.7    Entire Agreement.** This Agreement constitutes the entire agreement between the parties and supercedes all prior written and oral and all contemporaneous oral agreements or understandings between the parties with respect to the subject matter hereof. Except as otherwise provided herein, no variation of the terms and conditions of this Agreement shall be effective unless in writing signed by both parties hereto.

**11.8    Governing Law.** This Agreement and the transactions contemplated hereby shall be governed by and construed and interpreted in accordance with the laws of the District of Columbia without regard to its conflicts of law rules.

**11.9    Effectiveness.** This Agreement shall become valid and in full force and effect when it is duly executed by each party hereto.

**11.10    Counterparts.**    This Agreement may be executed in one (1) or more counterparts. Each full counterpart shall be deemed an original, but all such counterparts together shall constitute one and the same instrument.


SCANNED

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the day and year first written above.

Government Intelligence and Proposal Resources, Inc.

By: _~~~~~~~~_ CHRISTOPHER STAHL

Title: _PRESIDENT_

Frederic R Harris, Inc.

By: _~~~~~~~~_

Title: _VICE PRESIDENT_

SCANNED

ATTACHMENT A

### Guam Telephone Authority
### Environmental Due Diligence
### Scope of Work Summary

Contractor will provide necessary services to complete an environmental due diligence for properties currently owned by the Guam Telephone Authority. Sites to be included are identified in Table D-1: Guam Telephone Authority's Building and Equipment Facilities dated April 5, 2000. The scope will include the following:

**Phase I Environmental (Preliminary) Assessment**

The Phase I Environmental (Preliminary) Assessment will identify potential environmental concerns related to each subject site based upon:

- Site Reconnaissance

- Analysis of Background Information and Site History
  - Background information based on interviews and recent aerial photos (i.e., ASTM checklist items)
  - Current and past uses of the site and abutting properties
  - Maps of site (location and alignment drawings)
  - Government databases search (with significant finds shown on maps), if applicable

**Asbestos-Containing Building Material / Lead-Based Paint Inspection Protocol**

Accomplish the following asbestos/lead-based paint inspection activities:

- Perform a building records review, where available, to identify building construction date and materials used during construction. This information shall not be used in place of collecting samples.

- Conduct an interior and exterior building inspection for suspect asbestos containing building materials (ACBM) and lead-based paint (LBP)

- Collect and analyze suspect ACBM. All samples shall be collected in inconspicuous areas.

- LBP for the purposes of this project, is defined as lead concentrations $\geq 1.0$ mg/cm$^2$ by XRF spectrum analyzer or $\geq 0.5\%$ lead by weight.

- Inspect permanent building components only. Movable objects will not to be tested (e.g., file cabinets, storage racks, etc.).

  - Photograph the building and materials throughout the inspection to support site survey documentation.

  - Collect asbestos bulk samples according to the EPA AHERA regulation. The number of samples collected shall depend on the type of identified suspect material. According to the AHERA regulation, materials are classified as surfacing (e.g., wall plaster), thermal (e.g., pipe insulation), or miscellaneous (e.g., floor tile). The



SCANNED

number of samples to be collected depends on this classification and increases as the potential for either non-uniform mixture or poor asbestos distribution in the material increases. The following chart summarizes the sampling protocol used to comply with the AHERA regulation:

| Type of Material | Minimum Number of Samples |
|---|---|
| Surfacing | AHERA Statistically random criteria (minimum 3; maximum 7). For sampling areas greater than 10,000 square feet an additional sample will be taken for each additional 5,000 square feet. |
| Thermal System Insulation | Minimum of 3 samples per homogeneous area of suspect material. |
| Miscellaneous | Minimum of 2 samples. |

- Prepare black and white AutoCAD site drawings (8 1/2" x 11"). Separate drawings showing positive asbestos materials and sample locations will be provided.

**Report Scope**

Produce a Hazardous Phase I Site Investigation Report including the following information:

- Introduction
- Site Description
- Asbestos/Lead-Based Paint Findings
- Analysis of Site Background Information
- Conclusions
- Attachments
  - Site Location Maps
  - Site Photographs
  - Facility Floor Plans (including asbestos sampling/material locations)
  - Site Documentation (records search information)
  - Laboratory Results

SCANNED

# CONSULTANT AGREEMENT

Between

## THE GUAMTELEPHONE AUTHORITY

And

## GOVERNMENT INTELLIGENCE AND PROPOSAL RESOURCES, INC.

This Agreement is made this 14th day of July, 2000 (the "Effective Date"), by and between the Guam Telephone Authority, an instrumentality of the Government of Guam ("GTA") and Government Intelligence and Proposal Resources, Inc., a Florida corporation ("GIPR").

**WHEREAS**, the Guam Legislature, through Public Law Nos. 24-36 and 25-126, has determined it is in the best interests of Guam to privatize GTA; and

**WHEREAS**, to assist in the process of such privatization, it was decided that GTA should retain the services of a Procurement Advisor; and

**WHEREAS**, the services to be rendered are of a special and temporary nature which has been determined to be in the best public interest to be performed under contract by professional personnel other than employees in the service of GTA; and

**WHEREAS**, GTA has reviewed all reasonable privatization options and approached to administering the privatization process, and GTA believes that the approach set forth in this contract is the most efficient and most likely to achieve the highest evaluation in terms of the interests of the Government of Guam and fair treatment of the employees of GTA; and

**WHEREAS**, GTA has based its decisions relating to privatization not only on the goal of securing the highest dollar value for GTA but also on the following significant priorities: (a) Employee welfare inclusive of salary grade, pensions and future economics beyond the five year window introduced in the bill of privatization; (b) attraction of new industries and growth to the island's economy to implement the Governor's vision of 2001; and (c) the transaction complexities associated with reconciling these priorities and implementing the privatization in a manner that best protects and promotes the successful future of Guam; and



WHEREAS, dealing with these privatization complexities, including the issues associated with the transfer of GTA assets to the private sector requires expertise in financial and legal transactions beyond the core capabilities of GTA, and GTA therefore requires assistance from specialists in the areas of Privatization to maximize competition and will serve the best interest of the employees and the people of Guam; and

WHEREAS, GTA issued Request for Proposal GTA-P1-00 (the "RFP") soliciting proposals from prospective procurement advisors and, after receipt and evaluation of proposals, determined to award a contract to GIPR to act as the Procurement Advisor for the privatization of GTA (the "Privatization"); and

WHEREAS, GIPR has submitted a statement of qualifications and an interest in providing such service; and

WHEREAS, the award of this contract to GIPR has been made pursuant to a finding by GTA that GIPR is the best qualified based upon evaluation factors set forth in the request for proposals, and that negotiations of compensation has been determined to be fair and reasonable; and

WHEREAS, GTA and GIPR through this Agreement desire to set out the negotiated terms and conditions under which GIPR will act as Procurement Advisor.

NOW, THEREFORE, for the mutual promises set forth herein and for other good and adequate consideration, the sufficiency of which is hereby acknowledged, GTA and GIPR, intending to be bound, agree as follows:

I.    PURPOSE

The purpose of this Agreement is to procure for GTA the services of a Procurement Advisor in support of the Privatization.

II.    PROCUREMENT ADVISOR SERVICES

2.1    Commencing as of the Effective Date, GIPR shall commence provision of services as Procurement Advisor and use its best efforts to carry out the tasks and provide the services described in Schedule A to this Agreement. GIPR shall provide all management, administrative, clerical and supervisory services required for the effective and efficient performance of this Agreement. GIPR shall provide reasonable cooperation to other agents and consultants of GTA that may be retained in connection with the GTA privatization.

- 2 -

2.2    GIPR shall report and be responsible to Vincent P. Arriola, General Manager. GTA and the Board of Directors of GTA.


## III.    CONTRACT TERM.

The terms of this agreement shall commence on the Effective Date, as defined above, and conclude at the earlier of the termination of this agreement by either party or the expiration of five (5) years following the completion of the Privatization.


## IV.    GIPR COMPENSATION FOR SERVICES

### 4.1.    Fees Through Closing.

4.1.1. Upon closing of the transaction for the sale of the Government's interest in GTA (or GTA's interest in its tangible and or intangible assets, GIPR will receive a fee (in addition to expenses reimbursed, as provided below) based on the price paid by the buyer(s) of such interests or property (the "Price") (such paying party or parties are referred to herein as the "Successful Offeror"). For purposes of this Agreement, "Closing" refers to the transfer of all or a substantial part of the Government's interest in GTA (or GTA's interests in a substantial portion of its assets) and payment of any part of the Price. Specifically, GIPR will receive in a lump sum a fee equal to the sum of Two and one-quarter percent (2.25%) of the first US$200 million of the Price, One and eight tenths percent (1.8%) of the next $100 million of the Price and One and two-tenths percent (1.2%) of any amount over $300 million of the Price. Calculation of the Price will include value received by GTA (and the Government of Guam) calculated as the sum of cash payable by the Successful Offeror, the amount of any debt assumed by the Successful Offeror, the amount of any future cash investment commitment made in writing by the Successful Offeror (including the net present value of long term leases) and the fair market value of any non-cash compensation transferred to GTA, the Government of Guam or any Government-related entity in connection with the transaction. To the extent the Buyer is required to pay an "Administrative Fee" as part of its offer to cover GTA's Procurement Advisor and other transactions costs, such fee will not be included in the Price for purposes of calculation of the fee.

4.1.2. The fee set forth in 4.1.1 is based on the assumption that GTA or Government of Guam will sell all of its interest in GTA or the GTA assets, as applicable. In the event GTA (or the Government of Guam) reduces the scope of the plan by selling or transferring less than all of its interest in the assets and business of GTA (as applicable), or if the closing occurs after December 31, 2001, the amount of GIPR services will undoubtedly increase commensurately. Accordingly, if either of these events occurs, the fee for the first $200 million in Price shall be adjusted upward by one quarter of a percent (.25 %) of the Price for each 10 percent less than 100 percent sold; provided, however, except as set forth in Section 4.1.3. below, in no event shall the fee

- 3 -

for the first $200 million exceed the lesser of Three and one-quarter percent (3.25%) of the Price, or $4,600,000. If there occurs both a partial sale and a delay past December 31, 2001, the fee on the first $200 million of the Price shall be calculated as set out in this Section 4.1.2. but shall be not less than $3,000,000. In all events described in Sections 4.1.1. and 4.1.2. , the fee on the remainder of the Price (the portion of the Price over $200 million) shall be as described in Section 4.1.1.

**4.1.3.** If (a) the scope of GIPR's services (including those of GIPR subcontractors) are terminated in whole or substantial part, or substantially modified prior to Closing, (b) less than 50% of GTA is transferred or (c) the privatization effort is effectively suspended for a period of more than 120 days, GIPR may elect prior to Closing to be paid for the value of the actual time devoted to this matter, as reflected in the monthly statements sent to GTA pursuant to Section 4.3 below (the "Alternative Fee Election"). Such Election shall be made by written notice to GTA. Even if GIPR makes an Alternative Fee Election, if there occurs, within the 12 month period following any such termination or substantial reduction or modification of GIPR services or suspension of the privatization, a transfer to a third party of 35 percent or more of the Government's beneficial interest in GTA., the fee payable as provided in Sections 4.1.1 and 4.1.2. (net of progress payments and any fees paid based on monthly statements) shall be due to GIPR at Closing.

**4.1.4.** Fees payable to GIPR as described in Sections 4.1.1 and 4.1.2 shall be paid in full (net of any progress payments received by GIPR) by the Successful Offeror at Closing directly into an account designated by GIPR. GTA agrees that the agreements with the Successful Offeror will include provisions requiring such payment at Closing. Fees payable based on GIPR monthly statements shall be paid within 30 days after the earlier of the termination of the GIPR representation or the termination of the RFP process.

## 4.2 Post-Closing Fees.

GIPR shall be paid for post Closing audit and monitoring services on an hourly basis at the rates set forth in Schedule B hereto.

## 4.3. Expenses.

GTA shall reimburse GIPR on a monthly basis within 30 days of receipt of the GIPR monthly statement detailing such expenses for reasonable and actual expenses incurred by GIPR and its subcontractors in connection with the provision of services, including such expenses as transportation, lodging, meals, communications and other out of pocket expenses in accordance with Government of Guam per diem policies.

### 4.4.   Monthly Statements.

GIPR will provide GTA with monthly statements that set out a detailed listing of professional fees, by professional, and expenses. All expenses will be reimbursed to GIPR and post-Closing professional fees paid by GTA within 30 days of receipt of monthly statements. In the absence of an Alternative Fee Election, payment hereunder for professional fees for services through Closing will be made at Closing in accordance with the applicable portions of Sections 4.1.1 through 4.1.3. Professional billing rates shall be in accordance with the rates contained in Schedule B hereto and as subsequently approved in writing by GTA for subcontractor.

### 4.5   Progress Payments.

Notwithstanding the foregoing provisions, commencing on September 1, 2000 and on the first day of each month thereafter until Closing, GTA shall pay to GIPR monthly progress payments against fees in the amount of $10,000 per month. Expenses will be reimbursed separately pursuant to monthly statements as provided in Section 4.3.

### 4.6   Changes.

Subject to GSA Policy Office Regulations, an adjustment to the fee stated herein may be requested by the GIPR and authorized by GTA if the scope of work, time for completion, or services requested are increased over that agreed.

## V.   GIPR AGREES

5.1     That there shall be no employee benefits occurring from this Agreement, such as:

5.1.1  Insurance coverage provided by the Government or GTA;

5.1.2  Participation in the Government of Guam retirement system;

5.1.3  Accumulation of vacation leave, or sick leave.

5.2     That there shall be no withholding of taxes by the Government or GTA.

5.3     That GIPR will, within thirty (30) days after any claim accrues arising out of or in connection with the performance of this Agreement, give written notice to GTA and the Attorney General of Guam of such claim, setting forth in detail all the facts relating thereto and the basis for such claim; and that GIPR will not institute any suit or action against GTA or the Government in any court or tribunal in any jurisdiction based on any such claim later than one (1) year after such filing. Any action or suit on any claim shall

not include any item or matter not specifically mentioned in the proof of claim above specified. It is agreed that if such action or suit is instituted proof by GIPR of its compliance with the provisions of this paragraph shall be a condition precedent to any recovery; and that this paragraph does not constitute a waiver of any applicable statutes of limitations. For purposes of this Agreement, a claim relating to non-payment hereunder shall be deemed to arise 60 days after GTA receipt of GIPR invoice that has not been paid.

## VI.    GTA OBLIGATIONS

In addition to the other specific obligations set forth in this Agreement, GTA agrees to cooperate with and provide GIPR (and its subcontractors) such access to information regarding the business of GTA and to GTA employees, consultants and facilities, as may be reasonably necessary in connection with GIPR performance of this Agreement.

## VII.    RESPONSIBILITY OF GIPR

The GIPR shall be responsible for the professional and technical accuracy of all work and materials created by GIPR and furnished under this contract. GIPR shall, without additional cost to GTA, correct or revise all errors or deficiencies in their work. GTA review, approval, acceptance of, and payment of fees for services required under this Agreement, shall not be construed to operate as a waiver of any rights under this Agreement or of any cause of action arising out of GIPR's failure to perform and GIPR shall be and remain liable to the GTA for all costs of any kind which may be incurred by the GTA as a result of the GIPR's negligent performance of any of the services performed under this Agreement.

## VIII.    SUBCONTRACTORS

GTA acknowledges and accepts that GIPR may subcontract for legal and other services. Subject to the prior written approval of GTA, GIPR may subcontract with other professionals in carrying out the tasks of the Procurement Advisor as contemplated hereunder. Payment for subcontractor's services shall be the responsibility of GIPR. Fees for such subcontractor's efforts will be billed through GIPR (and detailed in the monthly statements), and such fees shall be deemed included in the percentage fees paid under sections 4.1.1. through 4.1.3. above, or paid as part of GIPR monthly statements as provided in section 4.1.3., as applicable. Local Guam counsel relationships (including payment therefor) are the responsibility of GTA.

## IX.    COMPLIANCE WITH LAWS / INDEPENDENT CONTRACTOR

GIPR shall be required to comply with all Federal and territorial laws and ordinances applicable to the work.  GIPR shall attach a copy of appropriate business license or a statement of exemption pursuant to 11 Guam Code Annotated Section 70106. In performance of this Agreement, GIPR and its subcontractors shall act as independent contractors and not as agents of GTA or the Government of Guam. Neither party to this Agreement has the authority to bind the other party to any third party contractual or other obligation.

## X.    ACCESS TO RECORDS AND OTHER REVIEW

GIPR, including its subcontractors, if any, shall maintain all books, documents, papers, accounting records and other evidence pertaining to costs incurred and to make such materials available at their respective offices at all reasonable times during the contract period and for three (3) years from the date of the final payment under the contract, for inspection by GTA or the Government of Guam.  Each subcontract by GIPR pursuant to this agreement shall include a provision containing the conditions of this Section X and shall be provided to GTA.

## XI.    OWNERSHIP OF DOCUMENTS

All briefs, memoranda and other incidental GIPR work or materials furnished hereunder shall be and remain the property of the GTA, including all publication rights and copyright interests, and may be used by the GTA without any additional cost to the GTA.

## XII.    INDEMNIFICATION

Each party to this Agreement shall indemnify and hold harmless the other party from any and all loss, damage, expense or cost (including reasonable attorney's fees and disbursements attendant thereto) arising out of or in any way connected with the indemnifying party's breach of any term of this Agreement.  Each party further agrees to indemnify and hold the other party harmless against any and all liability, claims, and costs of whatever kind and nature for injury to or death of any person or persons and/or loss or damage to any property occurring in connection with or in any way under the terms of this contract, to the extent resulting in whole or in part from the negligent act or omissions of the indemnifying party.

- 7 -

## XIII.   COVENANT AGAINST CONTINGENT FEES

GIPR warrants that it has not employed any person to solicit or secure any resultant contract upon agreement for a commission, percentage, brokerage or contingent fee.   Breach of this covenant gives GTA the right to terminate this agreement, or in its discretion, to deduct from the contract price or consideration the amount of such commission, brokerage or contingent fees.   This warranty shall not apply to commissions payable by GIPR upon contracts or sales secured or made through bona fide established commercial or selling agencies maintained by GIPR for the purpose of securing business.

## XIV.   DISPUTES

### 14.1   Enforceability.

GTA, as an agency of the Government of Guam acknowledge that this engagement agreement is enforceable against GTA and its successors and assigns in accordance with its terms, as contemplated under 5 Guam Code Annotated, Section 6105 .   GTA acknowledges that GIPR's subcontractor, if any, is a third party beneficiaries of this Agreement to the extent of its rights to fees for services to GTA through GIPR.   Accordingly, subcontractor shall have the right to enforce GIPR's rights hereunder to the extent such rights relate to services provided by such subcontractor and GIPR fails to act to so enforce those rights after written demand from the subcontractor .

### 14.2   Arbitration.

The parties will endeavor to settle amicably by mutual discussions any disputes, differences, or claims whatsoever related to this Agreement.   Failing such amicable settlement, any controversy, claim, or dispute arising under or relating to this Agreement, including the existence, validity, interpretation, performance, termination or breach thereof, shall finally be settled by arbitration in accordance with the Arbitration Rules of the American Arbitration Association ("AAA").   There will be one (1) jointly appointed arbitrator (the "Arbitrator") The language of the arbitration shall be English and the hearing will be held in Guam.   The Arbitration Tribunal will not have the authority to award punitive damages to either party. This Agreement will be enforceable, and any arbitration award will be final, and judgment thereon may be entered in any court of competent jurisdiction. Notwithstanding the foregoing, claims for preliminary injunctive relief, other pre-judgment remedies, and claims for GTA's failure to pay GIPR in accordance with this Agreement may be brought in the Superior Court of Guam.

**14.3   Limitation of Liability.**  Neither party to this Agreement shall be liable to the other party for indirect, consequential, expectancy or punitive damages.

## XV.   TERMINATION

Either of the parties hereto, may, by written notice to the other, terminate this Agreement in whole or in part at any time, either for convenience or default. In the case of a termination for default, either party may terminate this Agreement if:  (i) the other party breaches any material term or condition of this Agreement and fails to cure such breach within thirty (30) days after receipt of written notice of the same, except in the case of failure to pay fees when due, which must be cured within five (5) days after receipt of written notice from GIPR.   Upon termination for any reason, all briefs, reports, summaries, completed work and work in progress; and such other information and materials as may have been accumulated by GIPR in performing this Agreement shall, upon payment by GTA to GIPR of amounts owing hereunder, become the property of and be delivered to GTA, in the manner and to the extent determined by the GTA. Except as otherwise provided in this Agreement, if the Agreement is terminated by GIPR, or by GTA for cause, prior to its completion, GTA will pay GIPR the reasonable value for services (as determined from GIPR monthly statements and application of the rates set forth in Schedule B hereto) performed by GIPR or its subcontractors in accordance with the terms of this Agreement and reasonable expenses associated therewith.

## XVI.   SCOPE OF AGREEMENT

This Agreement supersedes any and all other prior agreements, either oral or in writing, between the parties hereto with respect to GTA retaining GIPR and contains all of the covenants and agreements between the parties with respect to such relationship. Each party to this Agreement acknowledges that no representation, inducements, promises or agreements, orally or otherwise, have been made by any party, or anyone acting on behalf of any party, which are not embodied herein, and that no other agreement, statement, or promise not contained in this agreement shall be valid or binding. Any modification of this Agreement will be effective only if it is in writing signed by the party to be charged.  For the purposes of this paragraph and of the entire Agreement the signature of the General Manager of GTA is the only signature that will bind GTA, and the signature of the Governor of Guam is the only signature that will bind the Government.

## XVII. MISCELLANEOUS PROVISIONS

**17.1   Severability.** If any provision of this agreement shall be deemed by a court of competent jurisdiction to be invalid, then such provision shall be deemed stricken from the agreement and the agreement shall be enforced according to its valid and subsisting terms and provisions.

**17.2   Cumulation of Remedies.** All remedies available to either party for breach or violation of this Agreement are cumulative and may be exercised concurrently or separately, and the exercise of any one remedy shall not be deemed an election of such remedy to the exclusion of other remedies. The parties hereto agree that irreparable damage would occur in the event any provision of this Agreement was not performed in accordance with the terms hereof and that the parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy at law or in equity.

**17.3   Waiver.** A waiver, express or implied, by either party of any default by the other in the observance and performance of any of the covenants or duties set forth herein shall not constitute or be construed as a waiver of any subsequent or other default.

**17.4   Assignment.** Neither party shall assign the Agreement in whole or in part without the written consent of the other party;  except that, GIPR may assign sums due hereunder to a third party.

**17.5   Notices.** Any notice or other communication hereunder shall be in writing and will be deemed to have been validly delivered by facsimile or courier and confirmed by registered or certified first class mail, return receipt requested, postage prepaid, addressed to the receiving party at the address set forth below its name or at such other address as such party may hereafter designate in writing to the other party.

If to GIPR:

GIPR, Inc.
47097 Glenaire Court
Sterling, VA 20165
Attention: Christopher Stahl

Fax 1-703-421-0143

If to GTA:

Guam Telephone Authority
624 N. Marine Drive
Tamuning, Guam 96911
Attention: Vincent Arriola, General Manager
Fax 671-649-4821

**17.6  Headings.**  The headings contained herein are for convenience only and shall not control the interpretation of any term or condition hereof.

**17.7  Entire Agreement.**  This Agreement constitutes the entire agreement between the parties and supercedes all prior written and oral and all contemporaneous oral agreements or understandings between the parties with respect to the subject matter hereof.  Except as otherwise provided herein, no variation of the terms and conditions of this Agreement shall be effective unless in writing signed by both parties hereto.

**17.8  Governing Law.**  This Agreement and the transactions contemplated hereby shall be governed by and construed and interpreted in accordance with the laws of Guam.

**17.9  Effectiveness.**  This Agreement shall become valid and in full force and effect when it is duly executed by each party hereto.

**17.10  Counterparts.**  This Agreement may be executed in one (1) or more counterparts.  Each full counterpart shall be deemed an original, but all such counterparts together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the day and year first written above.

**GOVERNMENT INTELLIGENCE AND PROPOSAL RESOURCES, INC.**

By: _____

Title:   President

**GUAM TELEPHONE AUTHORITY**

By: _____

Title:   General Manager

- 11 -