**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**(Civil Division)**

| | | |
|---|---|---|
| **DMJM + HARRIS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.:  1:08-cv-00094-RJL** |
| | ) | |
| **GOVERNMENT INTELLIGENCE AND** | ) | |
| **PROPOSAL RESOURCES, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT TELEGUAM HOLDINGS, LLC'S MOTION TO DISMISS

Defendant TeleGuam Holdings, LLC ("TeleGuam" or "defendant"), through its undersigned counsel, hereby moves pursuant to Federal Rule of Civil Procedure 12(b)(2), (3), (5) and (6), to dismiss all claims asserted against it in the complaint.  In support of its motion, defendant respectfully refers this Court to the attached memorandum of points and authorities.

WHEREFORE, defendant requests that plaintiff's Complaint be dismissed.

Respectfully submitted,

TOBIN, O'CONNOR & EWING

By:   /s/ David C. Tobin_____
David C. Tobin, Esq., D.C. Bar #395959
5335 Wisconsin Avenue, N.W., Suite 700
Washington, D.C.  20015
**dctobin@tobinoconnor.com**
Tel:  (202) 362-5900
Fax:  (202) 362-6579
*Attorneys for Defendant TeleGuam Holdings, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of March, 2008, a true and correct copy of the foregoing was served by first-class, postage pre-paid U.S. mail to:

Sidney S. Friedman, Esq.
Weinstock, Friedman & Friedman, P.A.
4 Reservoir Circle
Baltimore, Maryland  21208


/s/ David C. Tobin_____
David C. Tobin

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**(Civil Division)**

| | | |
|---|---|---|
| DMJM + HARRIS, INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No.:  1:08-cv-00094-RJL |
| | ) | |
| GOVERNMENT INTELLIGENCE AND | ) | |
| PROPOSAL RESOURCES, INC., et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**TELEGUAM HOLDINGS, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES**</u>
<u>**IN SUPPORT OF ITS MOTION TO DISMISS**</u>

Defendant TeleGuam Holdings, LLC ("TeleGuam" or "defendant"), through its undersigned counsel, hereby submits this Memorandum of Points and Authorities in Support of its Motion To Dismiss, and states as follows:

**I.    <u>STATEMENT OF FACTS</u>[1]**

Plaintiff DMJM + Harris, Inc. is a New York corporation that claims to have provided services to defendant Government Intelligence and Proposal Resources, Inc. ("GIPR") pursuant to a contract between plaintiff and GIPR, a Virginia corporation.   Complaint at ¶¶ 5, 9.  Plaintiff also alleges that it is an intended third-party beneficiary of a contract between GIPR and defendant Guam Telephone Authority ("GTA").  GTA is a telephone services company located in the territory of Guam.  <u>Id.</u> at ¶¶ 6, 11.  Plaintiff alleges that TeleGuam is a "successor" to GTA, having purchased GTA's assets.  <u>Id.</u> at ¶ 7.  The complaint does not allege any contractual relationship between plaintiff and TeleGuam, nor that plaintiff provided services directly to TeleGuam.

---

[1] This statement of facts is drawn directly from plaintiff's complaint.

Plaintiff also alleges that both contracts attached to the complaint contain arbitration clauses as well as provisions allowing plaintiff to sue. Id. at ¶ 10. Plaintiff alleges that arbitration has been demanded and is currently pending; however, plaintiff initiated this suit to "preserve its right to pursue this matter through court litigation." Id. at ¶ 12.

## II.    ARGUMENT

### A.    Plaintiff's Complaint Should Be Dismissed For Lack Of Personal Jurisdiction Over TeleGuam

Plaintiff's complaint should be dismissed pursuant to Fed R. Civ. P. 12(b)(2), because this Court lacks personal jurisdiction as to defendant TeleGuam. A "motion to dismiss for lack of personal jurisdiction tests not whether the plaintiff will prevail on the merits but instead whether or not the court may properly exercise jurisdiction over the movants." Kundrat v. District of Columbia, 106 F.Supp. 2d 1,4 (D.D.C. 2000). While undertaking this determination, the court assumes the truth of the allegations made, and draws all reasonable inferences in the plaintiff's favor. Id. However, "the court need not…accept as true the plaintiff's legal conclusions." Id.

Plaintiff alleges that jurisdiction in this matter is based on diversity of citizenship and amount in controversy as pursuant to 28 U.S.C. §1332. Complaint at ¶ 1. Plaintiff is a New York corporation, with its principal place of business in New York. Id. at ¶ 2. TeleGuam is alleged to be the "successor" to defendant GTA, a telephone services company located in Guam. Id. at ¶¶ 6-7.

A court's exercise of personal jurisdiction is "subject to the constraints of constitutional due process." Gorman v. Ameritrade Holding Co., 293 F.3d 506, 509 (D.C. Cir. 2002). Constitutional due process is satisfied if the defendant has "certain minimum contacts with [the District of Columbia] such that the maintenance of the suit does not offend 'traditional notions of

fair play and substantial justice.'"  Int'l Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945).

In diversity of citizenship cases, the court's exercise of personal jurisdiction is examined under the state law of the forum, here the law of the District of Columbia.  Gorman v. Ameritrade Holding Co., 293 F.3d 506, 509 (D.C. Cir. 2002).  See also Helmer v. Doletskaya, 393 F.3d 201, 205 (D.C. Cir. 2004).  The District of Columbia long-arm statute provides several ways that a District of Columbia court can exercise personal jurisdiction over a defendant.  First, a District of Columbia court may exercise personal jurisdiction over a person[2] "domiciled in, organized under the laws of, or maintaining his or her personal place of business in, the District of Columbia as to any claim for relief."  D.C. Code § 13-422.  In addition, District of Columbia courts can exercise so-called "specific jurisdiction" based on any claim arising from the person's transacting business or contracting to supply services within the District of Columbia, causing tortious injury by act or omission inside or outside of the District of Columbia, having an interest or possessing real property in the District of Columbia, or contracting to insure or act as a surety within the District of Columbia.  D.C. Code §13-423(a).  In such a case, the claim must arise from one of the foregoing acts.  D.C. Code §13-423(b).

Finally,  District of Columbia courts may exercise "general jurisdiction" over a foreign corporation as to claims not arising within the District, but only where that foreign corporation is "doing business" in the District.  See D.C. Code §13-334(a); see generally, Gorman, 293 F.3d at 509.  In order to satisfy due process, however, such "general jurisdiction" may only be exercised over a foreign corporation where its contacts with the District are "systematic and continuous."

---

[2] The D.C. Code defines a person, for the purposes of personal jurisdiction, as "an individual, his executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, whether or not a citizen or domiciliary of the District of Columbia and whether or not organized under the laws of the District of Columbia."  D.C. Code §13-421 (1981).

Id. at 509-10, citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868 (1984).

Plaintiff's complaint is devoid of any allegations that would provide a basis for this Court to exercise personal jurisdiction over TeleGuam under any of these methods.  There are no allegations that TeleGuam conducts or has conducted business in the District of Columbia; there are no allegations that TeleGuam maintains a place of business in the District of Columbia. There are no allegations that TeleGuam contracted to provide services in the District of Columbia, nor that it has committed a tort here. There are no allegations that TeleGuam has systematic and continuous contacts with the District.  Indeed, the complaint contains no allegations that TeleGuam or this litigation has any connection whatsoever to the District of Columbia.  In any event, as demonstrated by the affidavit of TeleGuam's Chief Financial Officer, John Brady, TeleGuam does not maintain any such contacts with the District.  See Exhibit 1, attached.

Furthermore, while the complaint alleges at ¶ 11 that the contract between plaintiff and GIPR provides for jurisdiction in the District of Columbia, that allegation is belied by the terms of the contract attached to the complaint.  The contract merely provides that the laws of the District of Columbia would apply to any dispute between plaintiff and GIPR, but that the jurisdiction for any such action would be in any state or federal court "with jurisdiction over the subject matter and the parties,"  Complaint Exh. 1 at ¶ 9.1.  Nothing in the complaint suggests that this Court has jurisdiction over any party.  In any event, TeleGuam is not even a party to that contract.

Plaintiff has failed to allege the minimum contacts, or indeed any contacts, necessary for this Court to exercise personal jurisdiction over TeleGuam. Accordingly, plaintiff's complaint should be dismissed as against TeleGuam for lack of personal jurisdiction.

### B.    The Complaint Should Be Dismissed for Insufficiency of Service of Process

Plaintiff's complaint should also be dismissed pursuant to Fed. R. Civ. P. 12(b)(5) for insufficiency of service of process because plaintiff failed to effect proper service upon TeleGuam. Pursuant to Fed. R. Civ. P. 4(h), a corporate entity such as TeleGuam may be served by delivery of the summons and complaint to an officer, managing general agent, or agent authorized by law to receive service of process. Additionally, it may be served in the manner permitted by Rule 4(e)(1), which permits service pursuant to the law of the state in which the judicial district is located – in this case, the federal judicial district is Guam.

The Guam Rules of Civil Procedure provide that service upon a corporation or association within the territory of Guam shall be effected either "in any manner prescribed or authorized by any law of Guam" or "by delivering a copy of the summons and of the complaint to an officer, managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant[.]" Guam Civ. P. Code §§ 4(e)(1) and 4 (h)(1) (2008). In addition, "[s]ervice may be effected by any person who is not a party and who is at least eighteen years of age." Guam Civ. P. Code §4(c)(2) (2008). The Guam Annotated Code contains a similar provision regarding how or by whom service should be accomplished and also provides that the summons must be served by delivering a copy, "if the suit is against a domestic corporation, to the president or other head of the corporation, a vice president, a secretary, an assistant secretary, general manager, or a person designated for service

of process or authorized to receive service of process[.]" Guam Ann. Code §§ 14104-14105 (2008).

Plaintiff's service upon TeleGuam was improper because it was not effected by either a person over eighteen years of age or a peace officer, but only by certified mail. See Exh. 1 at ¶ 9. The summons and complaint were not delivered to a corporate officer or agent. Id. Therefore, plaintiff's complaint should be dismissed for failure to effect proper service. See generally McManus v. District of Columbia, 530 F.Supp.2d 46, 65-67 (D.D.C. 2007).

### C.    Venue Is Improper in This District

The complaint should also be dismissed for improper venue under Rule 12(b)(3), Fed. R. Civ. P.  Pursuant to 28 U.S.C. § 1391(a)(2003), an action based only on diversity of citizenship may be brought only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Id.

Although the complaint contains no allegations regarding venue whatsoever, it is clear that venue in this District is improper. None of the defendants resides here; none of the actions giving rise to plaintiff's claims occurred here; no property that is the subject of the action is located here; and no defendant is subject to personal jurisdiction here. Accordingly, the complaint should be dismissed for improper venue. Cf. 2215 Fifth Street Associates v. U Haul Intern., Inc., 148 F.Supp.2d 50, 53-54 (D.D.C. 2001) (on motion to dismiss for improper venue, court need not accept plaintiff's legal conclusions regarding venue).

### D.    Plaintiff's Third-Party Beneficiary Claim Should Be Dismissed for Failure To State a Claim

Plaintiff's complaint should also be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  A complaint should be dismissed for failure to state a claim only when, taking all of the plaintiff's factual allegations as true, the plaintiff fails to allege a "plausible entitlement to relief" by setting forth facts consistent with it allegations.  See, e.g., Simpson v. Socialist People's Libyan Jamahiriya 529 F.Supp. 80, 83-84 (D.D.C. 2008), citing Bell Atl. Corp. v. Twombly, __ U.S. ___, ___, 127 S.Ct. 1955, 1967, 1969 (2007).

Plaintiff's  breach of contract claim is based on two separate contracts.  The first contract is between plaintiff and GIPR, and the second contract is between GIPR and GTA.  Complaint at ¶ 11.  Plaintiff alleges that both contracts were for the provision of professional services by plaintiff to GIPR on behalf of GTA, for which TeleGuam is alleged to be a successor.  Id. at ¶ 9.

Plaintiff makes no allegations that it contracted with or provided services directly to GTA or TeleGuam.  Rather, it claims to be a third-party beneficiary of the contract between GIPR and GTA pursuant to ¶ 14.1 of that contract, which states: "GTA acknowledges that GIPR's subcontractor…is a third-party beneficiar[y] of this [a]greement to the extent of its right to fees for services to GTA through GIPR."  Exhibit 2 to Complaint at ¶ 14.1.

District of Columbia law does provide that "a third-party beneficiary of a contract has the legal right to enforce it if the parties intended that party to benefit from a particular provision."  A.S. Johnson Co. v. Atlantic Masonry Co., 693 A.2d 1117, 1122 (D.C.C.A. 1997).[3]  However, the contract between GIPR and GTA does not evidence any intent to allow plaintiff to recover from GTA or TeleGuam under the circumstances alleged in the complaint.  The contract states

---

[3] In diversity of citizenship cases, the District Court looks to the substantive law of the forum.  Outlaw v. Airtech Air Conditioning and Heating, Inc., 412 F.3d 156, 164 (D.C. Cir. 2005).

7

only that "subcontractors shall have the right to enforce GIPR's rights hereunder to the extent such rights relate to services provided by such subcontractor and GIPR fails to act to so enforce those rights after written demand from the subcontractor." Exhibit 2 to Complaint at ¶ 14.1. At most, plaintiff is entitled to enforce <u>GIPR's</u> rights to payment from GTA under their contract. Plaintiff, however, does not allege that it is asserting GIPR's right to some payment from GTA. Rather, plaintiff claims that it has not been paid for the work it did for GIPR. And the GIPR contract makes clear that "[p]ayment for subcontractor's services shall be the responsibility of GIPR." <u>Id.</u> at ¶ 8. Plaintiff nowhere alleges that GIPR is entitled to payment from GTA for this work. Nor does the complaint allege that plaintiff has provided the written notice required by paragraph 14.2 of the contract between GTA and GIPR. Pursuant to the contract, plaintiff is only permitted to raise claims directly against GTA for payment if GIPR has failed act and if a written demand has been made. No such failure has been alleged by plaintiff, and therefore its claim must fail.

### E.    Both Contracts Require Arbitration, Which Plaintiff Has Already Demanded

Even assuming plaintiff has a claim under either contract, both contracts have arbitration clauses requiring that the claims be arbitrated. In fact, on January 31, 2008, plaintiff filed an Amended Demand for Arbitration (the "Demand") against TeleGuam, LLC and all other parties involved in this dispute. <u>See</u> Exh. 2, attached. In that Demand, plaintiff acknowledged that both its principal contract with GIPR, and the contract between GIPR and GTA under which it claims third-party beneficiary status, provide for arbitration:

> The above-named claimant, a party to an arbitration agreement dated October 4, 2000, between [plaintiff] . . . and Government Intelligence and Proposal Resources, Inc. ("GIPR"), which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, <u>hereby demands arbitration</u>. Likewise, [plaintiff] is a recognized subcontractor and third-party

beneficiary in a contract between GIPR and the Guam Telephone Authority, which also contains an arbitration clause.

Exh. 2 at page 2-3 of 3 (emphasis supplied).[4]

Furthermore, on March 6, 2008, in response to an objection to the Demand filed by GTA, plaintiff argued that the claims it asserts here <u>must</u> be arbitrated, as opposed to being resolved in court:

Resolution of the matter should be through arbitration. The parties contractually agreed to arbitration, and are bound by the terms of the contract.

Exhibit 3 at 8.

Having demanded arbitration under both contracts on which its claims are based, plaintiff should not be permitted to proceed with litigation in this Court, and at a minimum this action should be stayed pending arbitration. <u>See generally</u> <u>Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.</u>, 460 U.S. 1, 24-25, 103 S.Ct. 927 (1983) (Federal Arbitration Act creates a strong presumption in favor of arbitration). <u>See also</u> the Federal Arbitration Act, 9 U.S.C. § 4 (2000).

## III.    <u>CONCLUSION</u>

For all of the foregoing reasons, TeleGuam respectfully requests that plaintiff's complaint be dismissed for lack of personal jurisdiction.

---

[4] This Court has suggested that a motion to compel arbitration is analogous to a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. <u>See, e.g.</u>, <u>Brown v. Dorsey & Whitney, L.L.P.</u>, 267 F.Supp.2d. 61, 66-67 (D.D.C. 2003). TeleGuam thus submits that it is appropriate to consider plaintiff's filings in the arbitration, notwithstanding they are outside the pleadings, because plaintiff admits in the complaint that arbitration has already commenced. Complaint at ¶ 12. <u>See, e.g.</u>, <u>Herbert v. National Academy of Sciences</u>, 974 F.2d 192, 197 (D.C.Cir 1992) (on Rule 12(b)(1) motion, court may consider complaint supplemented by undisputed facts evidenced in the record).

Respectfully submitted,

TOBIN, O'CONNOR & EWING

By:   /s/ David C. Tobin_____
        David C. Tobin, Esq., D.C. Bar #395959
        5335 Wisconsin Avenue, N.W., Suite 700
        Washington, D.C.  20015
        dctobin@tobinoconnor.com
        Tel:  (202) 362-5900
        Fax:  (202) 362-6579
        *Attorneys for Defendant TeleGuam Holdings, LLC*

### UNITED STATE DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA
### (Civil Division)

| | | |
|---|---|---|
| **DMJM + HARRIS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.:** |
| **v.** | ) | **1:08-cv-00094 RJL** |
| | ) | |
| **GOVERNMENT INTELLIGENCE AND** | ) | |
| **PROPOSAL RESOURCES, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

### AFFIDAVIT OF JOHN BRADY

John Brady declares the following under penalty of perjury:

1.     I am the Chief Financial Officer of Teleguam Holdings, L.L.C. a full-service communications company that provides communication services to Guam's residents, businesses and government agencies

2.     I am aware of the Complaint filed by plaintiff DMHM + Harris, Inc. in the United States District Court for the District of Columbia against several defendants, including defendant Teleguam Holdings, L.L.C..

3.     Teleguam Holdings, L.L.C. operates and conducts business only within the Territory of Guam.

4.     Teleguam Holdings, L.L.C.does not, and has never previously, had an office or representative in the District of Columbia.

5.     Teleguam Holdings, L.L.C.does not, and has not ever to my knowledge transacted any business in the District of Columbia.

6.     Teleguam Holdings, L.L.C.does not, and has never previously, contracted to conduct any business or supply any services in the District of Columbia.

7.     Teleguam Holdings, L.L.C.does not have an interest in or posses any real property in the District of Columbia.

8.     Teleguam Holdings, L.L.C. is not registered to conduct business in the District of Columbia.

9.     The summons and complaint in this matter was not delivered to an officer, managing agent or general agent authorized by TeleGuam Holdings LLC to accept service of process.  Rather, it was sent by certified mail.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: __3/17/08__                    _____John Brady CFO_____

John Brady, CFO



**PARTNERS**
SIDNEY S. FRIEDMAN (MD, DC)
EDWARD J. FRIEDMAN (MD, DC, VA)
JEFFREY M. LIPPMAN (MD, DC)

**OF COUNSEL**
MELVIN J. WEINSTOCK
MARC SHACH

**MANAGING ATTORNEYS**
ILONA M. FISHER
WILLIAM H. THRUSH, JR. (MD, DC)

**ATTORNEYS**
GREG I. ROSE (MD, DC, PA, VA)
MICHAEL W. MOORE (MD, DC)
CRAIG A. SCHOENFELD
CHRISTINE GAGE
SHANNON B. KRESHTOOL (MD, DC)
H. JEFFREY ZIEGLER (MD, DC)
DENISE L. KINNARD
JOHN R. ROSSBACH
J C AMOS (MD, WV)
JASON E. SOLOMON (MD, DC)
OWEN BLUM (MD, DC)
WALTER D. TY
REBECCA A. CARTER
JAMIE B. GLICK (MD, DC)
KIMBERLY A. SAXON
VICTOR A. LEMBO
MELISSA L. FRENTZ
LISA D. ETTLINGER
LISA L. GEIER
LISA M. GOLDBLATT (MD, DC, NY)
DARLENE T. DAVIES
LAYLA SAID
JORDAN I. SELZER (MD, DC)
D. WILLIAM BROOKE (MD, DC)
TATARSHA D. HARRIS (MD, NY, NJ)
SUZAN A. PHILLIPS (MD, MA, JAMAICA)
WAYNE G. GRACEY (MD, PA)
ROSEMARY E. ALLULIS
BRIAN GREUTER

## LAW OFFICES
# WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A.

EXECUTIVE CENTRE
4 RESERVOIR CIRCLE
BALTIMORE, MD 21208-7301

410-559-9000
FAX: 410-559-9009
NORTHERN VA, DC & MD SUBURBS
800-999-8286

**WWW.WEINSTOCKLEGAL.COM**

January 31, 2008

American Arbitration Association
Southeast Case Management Center
Attn: Lorena P. Garcia, Case Manager
AAA
2200 Century Parkway, Suite 300
Atlanta, GA 30345-3203

Re:    **Amended Demand for Arbitration**
          **Re: 74 192 0003908 LOPE**

Dear Ms. Garcia:

Please find enclosed an Amended Demand for Arbitration regarding the above-captioned matter.

Thank you for your continued cooperation in this matter.

I remain,

Very truly yours,

WEINSTOCK, FRIEDMAN
& FRIEDMAN, P.A.

Rosemary E. Allulis

REA/jam
enclosure

cc:    DMJM Harris
       Attn: Howard R. Gale
       333 Ludlow Street
       Stamford, CT 06902

       Government Intelligence and Proposal Resources, Inc.
       47097 Glenaire Court
       Sterling, VA 20165
       Attn: Christopher Stahl

       The Guam Telephone Authority (GTA)
       624 N. Marine Drive
       Tamuning, Guam 96911
       Attn: Vincent Arriola, General Manager

Page 2
January 31, 2008

cc:     TeleGuam Holdings, LLC
        as successor to the Guam
        Telephone Authority
        624 N. Marine Drive
        Tamuning, Guam 96911
        Attn: Daniel Moffat, President & CEO

        Interim Transition Coordinating Committee,
        as agent to The Guam Telephone Authority
        Orlean Pacific Plaza, Suite 1B
        851 S. Marine Corps Drive
        Tamuning, Guam 96913
        Attn: Marcel Camacho, Committee Executive Director

WEINSTOCK, FRIEDMAN &
FRIEDMAN, P.A.
EXECUTIVE CENTRE
4 RESERVOIR CIRCLE
BALTIMORE, MD 21208-7301

410-559-9000
FAX: 410-559-9009

American Arbitration Association
*Dispute Resolution Services Worldwide*

**– AMENDED –**

### COMMERCIAL ARBITRATION RULES
### DEMAND FOR ARBITRATION

| | |
|---|---|
| **MEDIATION:** *If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box.* ☐ *There is no additional administrative fee for this service.* | |

| Name of Respondent<br>Government Intelligence and Proposal Res., et al | Name of Representative (if known) |
|---|---|
| Address<br>**SEE CONTINUE SHEET FOR AMENDED DEMAND** | Name of Firm (if applicable) |
| | Representative's Address |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| | | | | | |

| Phone No. | Fax No. | Phone No. | Fax No. |
|---|---|---|---|
| | | | |

| Email Address: | Email Address: |
|---|---|
| | |

The named claimant, a party to an arbitration agreement dated _____, which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

THE NATURE OF THE DISPUTE

**SEE CONTINUATION SHEET FOR AMENDED DEMAND FOR ARBITRATION**

| Dollar Amount of Claim $126,751.43 | Other Relief Sought: ☒ Attorneys Fees  ☒ Interest<br>☐ Arbitration Costs ☐ Punitive/ Exemplary ☐ Other ___ |
|---|---|

AMOUNT OF FILING FEE ENCLOSED WITH THIS DEMAND (please refer to the fee schedule in the rules for the appropriate fee) $

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:

Hearing locale_____ (check one) ☐ Requested by Claimant   ☐ Locale provision included in the contract

| Estimated time needed for hearings overall:<br>_____ hours or _____ days | Type of Business: Claimant _____<br>Respondent_____ |
|---|---|

Is this a dispute between a business and a consumer? ☐Yes ☐ No Does this dispute arise out of an employment relationship? ☐ Yes ☐ No

If this dispute arises out of an employment relationship, what was/is the employee's annual wage range? Note: This question is required by California law. ☐Less than $100,000 ☐ $100,000 - $250,000 ☐ Over $250,000

You are hereby notified that copies of our arbitration agreement and this demand are being filed with the American Arbitration Association's Case Management Center, located in (check one) ☒ Atlanta, GA  ☐ Dallas, TX   ☐ East Providence, RI  ☐ Fresno, CA  ☐ International Centre, NY, with a request that it commence administration of the arbitration.  Under the rules, you may file an answering statement within fifteen days after notice from the AAA.

| Signature (may be signed by a representative)   Date: 11/30/08 | Name of Representative<br>Sidney S. Friedman |
|---|---|
| Name of Claimant<br>DMJM + Harris, Inc. | Name of Firm (if applicable)<br>Weinstock, Friedman & Friedman, P.A. |
| Address (to be used in connection with this case)<br>333 Ludlow Street | Representative's Address<br>4 Reservoir Circle |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| Stamford | Conn | 6902- | Baltimore | Md | 21208- |

| Phone No. | Fax No. | Phone No.<br>410-559-9000 | Fax No.<br>410-559-9009 |
|---|---|---|---|
| | | | |

| Email Address: | Email Address: |
|---|---|
| | |

To begin proceedings, please send two copies of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to the AAA.  Send the original Demand to the Respondent.

Please visit our website at www.adr.org if you would like to file this case online.  AAA Customer Service can be reached at 800-778-7879

**Commercial Arbitration Rules**
**AMENDED DEMAND FOR ARBITRATION**
continuation sheet

I.    **Claimant:**

      DMJM + Harris, Inc.
      333 Ludlow Street
      Stamford, Connecticut 06902

II.    **Respondents:**

    1)    Government Intelligence and Proposal Resources, Inc.
           47097 Glenaire Court
           Sterling, Virginia 20165
           Attn.: Christopher Stahl

    2)    The Guam Telephone Authority (GTA)
           624 N. Marine Drive
           Tamuning, Guam 96911
           Attn.:  Vincent Arriola, General Manager

    3)    TeleGuam Holdings, LLC, as successor to The Guam Telephone Authority
           624 N. Marine Drive
           Tamuning, Guam 96911
           Attn.:  Daniel Moffat, President and CEO

    4)    Interim Transition Coordinating Committee, as agent of The Guam Telephone
           Authority
           Orlean Pacific Plaza, Suite 1B
           851 S. Marine Corps Drive
           Tamuning, Guam 96913
           Attn.: Marcel Camacho, Committee Executive Director

III)    **Demand for Arbitration**

The above-named Claimant, a party to an arbitration agreement dated October 4, 2000, between DMJM + Harris, Inc. ("DMJM"), formerly known as, Frederic R. Harris (FRHARRIS) and Government Intelligence and Proposal Resources, Inc. ("GIPR"), which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.  Likewise, Claimant is a recognized subcontractor and third-party beneficiary in a contract between GIPR and

the Guam Telephone Authority, which also contains an arbitration clause. The arbitration clause mandates that the claim be submitted to one jointly appointed arbitrator, with the hearing to be conducted in Washington, D.C. The contract between Government Intelligence and Proposal Resources, Inc. and The Guam Telephone Authority, to which Claimant was a subcontractor and third-party beneficiary is to be construed under the laws of Guam. Upon information and belief, TeleGuam Holdings, LLC is the successor to The Guam Telephone Authority and/or the Interim Transition Coordinating Committee is the authorized agent for The Guam Telephone Authority subsequent to the privatization, however, Claimant has been unable to determine the actual entity status for this Committee, despite request. Therefore, upon information and belief, since the privatization, either TeleGuam Holdings, LLC, as successor to GTA, or the Interim Transition Coordinating Committee, as the authorized agent of GTA, is liable to Claimant for the amount claimed.

IV)    **Nature of Dispute**

At the time the parties entered into the contract described below and which is attached as Exhibit 1, Claimant was formerly known as Frederic R. Harris, Inc. Subsequently, Frederic R. Harris, Inc. changed its name through a merger with a sister corporation, and is now known as DMJM + Harris, Inc., as successor to Frederic R. Harris, Inc.

Pursuant to a services agreement between DMJM and GIPR, DMJM performed various services as a subcontractor of GIPR, for the benefit of GTA. GIPR had a contract with GTA to provide assistance in its efforts to privatize the Guam Telephone Authority (GTA). Pursuant to the contract between GIPR and GTA, Claimant was a recognized subcontractor, with the right to pursue payment for services rendered.

In accordance with the contracts and the corresponding scope of work, DMJM performed environmental due diligence for properties owned by GTA, and incurred both professional fees for services rendered, as well as actual costs and expenses associated with its work. All work was completed at the request of GIPR and for the benefit of GTA, and was performed in accordance with the contracts between the parties. DMJM was to be paid following the completion of the GTA privatization.

GIPR paid $40,000.00 to DMJM, however, this amount was not the total amount due, leaving a balance due and owing of $79,596.82, plus interest and attorneys fees, for a total claim of $126,751.43. DMJM has attempted to resolve this issue with both GIPR and GTA, however, GIPR contends that GTA was to pay DMJM directly after its contract was assumed by a third party. GTA has refused to provide any documentation to show whether GIPR submitted Claimant's to GTA, or whether GTA paid GIPR. Although the privatization occurred, to date, DMJM has not received payment as was agreed. Payment was to be made after privatization was finalized. As a result, DMJM

has suffered damages.

Attached, are the underlying contracts containing the arbitration provisions as follows:

Exhibit 1: Services Agreement between Frederic R. Harris, Inc. and Government Intelligence and Proposal Resources, Inc.

Exhibit 2: Consultant Agreement between The Guam Telephone Authority and Government intelligence and Proposal Resources, Inc.

V)    **Remedy Sought**

Claimant requests an award in its favor in the principal amount of $79,596.82, plus interest and attorneys fees, for a total award of $126,751.43.

Demand for Arbitration submitted on behalf of DMJM + Harris, Inc. by:

Sidney S. Friedman
Rosemary E. Allulis

Weinstock, Friedman & Friedman, P.A.
4 Reservoir Circle
Baltimore, Maryland 21208
410-559-9000
410-559-9009 Fax
ssf@weinstocklegal.com

SUN 11:22 FAX 561 964 1062 503-501-7759 Guam Desk. @003

09-2354-48

.51-7110- disc

## SERVICES AGREEMENT BETWEEN
## FREDERIC R HARRIS, INC.
## AND
## GOVERNMENT INTELLIGENCE AND PROPOSAL RESOURCES, INC.

This Agreement is made as of October 4, 2000 ("Effective Date"), by and between Frederic R.
Harris (FRHARRIS), a corporation with a principal place of business at 2751 Prosperity Rd.
Suite 300, Fairfax, VA 22031, and Government Intelligence and Proposal Resources, Inc.,
("GIPR"), a corporation organized under the laws of Florida and having a place of business at
47097 Glenaire Ct. Sterling, VA 20165.

WHEREAS, GIPR has a Contract with the Guam Telephone Authority (GTA) on Guam known
as the Procurement Advisor which provides the GTA with assistance in their efforts to Privatize
the GTA; and

WHEREAS, the GTA desires to complete through GIPR an initial due diligence analysis of its
environmental status relative to potential issues; and

WHEREAS, FRHARRIS desires to provide this analysis for the GTA.

NOW, THEREFORE, for the mutual promises set forth herein and for other good and adequate
consideration, the sufficiency of which is hereby acknowledged, FRHARRIS and GIPR,
intending to be bound, agree as follows:

### 1. PURPOSE

FRHARRIS will provide the services identified in Attachment A to the GTA beginning
no later than October 16, 2000 and completing prior to December 4, 2000.

### 2. FEES

FRHARRIS will be reimbursed for professional fees as identified in Attachment B within
10 days upon closing of the sale of the GTA or upon termination of the privatization
process by the GTA. For the purpose of this Agreement, employees of FRHARRIS'
affiliated companies shall be considered employees of FRHARRIS. Any corporation
wholly owned by FRHARRIS' ultimate parent company is a FRHARRIS affiliated
company.

### 3. EXPENSES

GIPR shall reimburse FRHARRIS upon receipt of an FRHARRIS invoice detailing such
expenses for reasonable and actual expenses incurred by FRHARRIS in connection with
the provision of services, including such expenses as transportation, lodging, meals,
communications and other out of pocket expenses in accordance with Guam per diem
policies. Such expenses shall be provided to FRHARRIS after receipt of it from the GTA.

FRHARRIS will be reimbursed for miscellaneous expenses as identified in
Attachment B upon receipt of an FRHARRIS invoice detailing such expenses

TRACEY - Guam Desk

Lassiter

SCANNED


EXHIBIT

including receipts. Such expenses shall be provided to FRHARRIS after receipt of same from the GTA.

### 4.   GROSS RECEIPTS TAX

FRHARRIS may be assessed the Government of Guam Gross Receipts Tax of four percent (4%) of professional fees. Reimbursement to FRHARRIS of any assessed Gross Receipt Tax will be negotiated by GIPR with the GTA. It is intended that the Gross Receipts Tax will not be assessed.

### 5.   INDEMNIFICAION

Each party to this Agreement shall indemnify and hold harmless the other party from any and all loss, damage, expense or cost (including reasonable attorney's fees and disbursements attendant thereto) arising out of or in any way connected with the indemnifying party's breach of any term of this Agreement or, in the case of GIPR, the PA Agreement. Each party further agrees to indemnify and hold the other party harmless against any and all liability, claims, and costs of whatever kind and nature for injury to or death of any person or persons and for loss or damage to any property occurring in connection with or in any way under the terms of this Agreement or, in the case of GIPR, the PA Agreement, to the extent resulting in whole or in part from the negligent act or omissions of the indemnifying party.

### 6.   MONTHLY STATEMENTS

FRHARRIS will provide GIPR with statements that set out a detailed listing of FRHARRIS hourly professional fees and description of work completed, by professional, and expenses. These statements will be included by GIPR in the corresponding monthly statements that GIPR will submit to GTA, as contemplated in PA Contract.

### 7.   COMPLIANCE WITH LAWS / INDEPENDENT CONTRACTOR

FRHARRIS and GIPR shall comply with all Federal and territorial laws and ordinances applicable to the work. In performance of this Agreement, each party shall act as an independent contractor and not as an agent of the other party. Neither party to this Agreement has the authority to bind the other party to any third party contractual or other obligation.

### 8.   ACCESS TO RECORDS AND OTHER REVIEW

FRHARRIS shall maintain all books, documents, papers, accounting records and other evidence pertaining to costs incurred and to make such materials available at their respective offices at all reasonable times during the contract period and for three (3) years from the date of the final payment under the contract, for inspection by the Government of Guam and/or GIPR. All briefs, memoranda and other incidental FRHARRIS work or materials furnished hereunder shall upon full payment to FRHARRIS be and remain the property of the GTA, including all publication rights and copyright interests, and may be used by the GTA without any additional cost to the GTA.

SCANNED

## 9.  DISPUTES

### 9.1    ARBITRATION

The parties will endeavor to settle amicably by mutual discussions any disputes, differences, or claims whatsoever related to this Agreement. Failing such amicable settlement, any controversy, claim, or dispute arising under or relating to this Agreement, including the existence, validity, interpretation, performance, termination or breach thereof, shall finally be settled by arbitration in accordance with the Arbitration Rules of the American Arbitration Association ("AAA"). There will be one (1) jointly appointed arbitrator (the "Arbitrator") The language of the arbitration shall be English and the hearing will be held in Washington, D.C. The Arbitrator will not have the authority to award punitive damages to either party. This Agreement will be enforceable, and any arbitration award will be final, and judgment thereon may be entered in any court of competent jurisdiction. Notwithstanding the foregoing, claims for preliminary injunctive relief, other pre-judgment remedies, and claims by FRHARRIS for GIPR's failure to pay FRHARRIS in accordance with this Agreement or enforce rights under the PA Contract affecting FRHARRIS may be brought in a state or federal court in the United States with jurisdiction over the subject matter and parties.

### 9.2    LIMITATION OF LIABILITY

Neither party to this Agreement shall be liable to the other party for indirect, consequential, expectancy or punitive damages.

## 10.  TERMINATION

(a)  Either of the parties hereto may, by written notice to the other, terminate this Agreement in whole or in part at any time, either for convenience or default.

(b)  In the case of a termination for default, either party may terminate this Agreement if: the other party breaches any material term or condition of this Agreement and fails to cure such breach within thirty (30) days after receipt of written notice of the same, except in the case of failure to pay fees and reimbursable expenses when due, which must be cured within ten (10) business days after GIPR receipt of written notice from FRHARRIS.

(c)  Upon termination for any reason, all documents, reports, summaries, completed work and work in progress, and such other information and materials as may have been accumulated by FRHARRIS in performing this Agreement shall, upon payment to FRHARRIS of amounts owing hereunder, became the property of and be delivered to the Government of Guam in the manner and to the extent determined by the GTA.

## 11.    MISCELLANEOUS PROVISIONS

### 11.1    Severability.  Any invalidity, in whole or in part, of any provision of this Agreement shall not affect the validity or enforceability of any other of its provisions.

### 11.2    Cumulation of Remedies.  All remedies available to either party for breach or violation of this Agreement are cumulative and may be exercised concurrently or separately, and the exercise of any one remedy shall not be deemed an election of such



SCANNED

remedy to the exclusion of other remedies. The parties hereto agree that irreparable damage would occur in the event any provision of this Agreement was not performed in accordance with the terms hereof and that the parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy at law or in equity.

11.3    Waiver. A waiver, express or implied, by either party of any default by the other in the observance and performance of any of the covenants or duties set forth herein shall not constitute or be construed as a waiver of any subsequent or other default.

11.4    Assignment. Neither party shall assign the Agreement in whole or in part without the written consent of the other party.

11.5    Notices. Any notice or other communication hereunder shall be in writing and will be deemed to have been validly delivered by facsimile or courier and confirmed by registered or certified first class mail, return receipt requested, postage prepaid, addressed to the receiving party at the address set forth below its name or at such other address as such party may hereafter designate in writing to the other party.

> If to GIPR:
>
> GIPR, Inc.
> 47097 Glenaire Court
> Sterling, VA 20165
> Attention: Christopher Stahl
>
> If to FRHARRIS:
>
> FR Harris, Inc.
> 2751 Prosperity Rd. Suite 300
> Fairfax, VA 22031
> Attention: Greg Coleman

11.6    Headings. The headings contained herein are for convenience only and shall not control the interpretation of any term or condition hereof.

11.7    Entire Agreement. This Agreement constitutes the entire agreement between the parties and supercedes all prior written and oral and all contemporaneous oral agreements or understandings between the parties with respect to the subject matter hereof. Except as otherwise provided herein, no variation of the terms and conditions of this Agreement shall be effective unless in writing signed by both parties hereto.

11.8    Governing Law. This Agreement and the transactions contemplated hereby shall be governed by and construed and interpreted in accordance with the laws of the District of Columbia without regard to its conflicts of law rules.

11.9    Effectiveness. This Agreement shall become valid and in full force and effect when it is duly executed by each party hereto.

11.10    Counterparts. This Agreement may be executed in one (1) or more counterparts. Each full counterpart shall be deemed an original, but all such counterparts together shall constitute one and the same instrument.

*SCANNED*

10/15/00  SUN 11:24 FAX 561 864 1082                                    @007

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the day and year first written above.

Government Intelligence and Proposal Resources, Inc.

By: _____ CHRISTOPHER STAHL

Title: PRESIDENT

Frederic R. Harris, Inc.

By: _____

Title: VICE PRESIDENT

SCANNED

10/15/00   SUN 11:25 FAX 561 964 1062                                                    ☒008

**ATTACHMENT A**

**Guam Telephone Authority**
**Environmental Due Diligence**
**Scope of Work Summary**

Contractor will provide necessary services to complete an environmental due diligence for properties currently owned by the Guam Telephone Authority. Sites to be included are identified in Table D-1: Guam Telephone Authority's Building and Equipment Facilities dated April 5, 2000. The scope will include the following:

**Phase I Environmental (Preliminary) Assessment**

The Phase I Environmental (Preliminary) Assessment will identify potential environmental concerns related to each subject site based upon:

- Site Reconnaissance
- Analysis of Background Information and Site History
  - Background information based on interviews and recent aerial photos (i.e., ASTM checklist items)
  - Current and past uses of the site and abutting properties
  - Maps of site (location and alignment drawings)
  - Government databases search (with significant finds shown on maps), if applicable

**Asbestos-Containing Building Material / Lead-Based Paint Inspection Protocol**

Accomplish the following asbestos/lead-based paint inspection activities:

- Perform a building records review, where available, to identify building construction date and materials used during construction. This information shall not be used in place of collecting samples.
- Conduct an interior and exterior building inspection for suspect asbestos containing building materials (ACBM) and lead-based paint (LBP)
- Collect and analyze suspect ACBM. All samples shall be collected in inconspicuous areas.
- LBP for the purposes of this project, is defined as lead concentrations $\geq 1.0$ mg/cm$^2$ by XRF spectrum analyzer or $\geq 0.5\%$ lead by weight.
- Inspect permanent building components only. Movable objects will not to be tested (e.g., file cabinets, storage racks, etc.).
  - Photograph the building and materials throughout the inspection to support site survey documentation.
  - Collect asbestos bulk samples according to the EPA AHERA regulation. The number of samples collected shall depend on the type of identified suspect material. According to the AHERA regulation, materials are classified as surfacing (e.g., wall plaster), thermal (e.g., pipe insulation), or miscellaneous (e.g., floor tile). The

*SCANNED*

number of samples to be collected depends on this classification and increases as the potential for either non-uniform mixture or poor asbestos distribution in the material increases. The following chart summarizes the sampling protocol used to comply with the AHERA regulation:

| Type of Material | Minimum Number of Samples. |
|---|---|
| Surfacing | AHERA Statistically random criteria (minimum 3; maximum 7). For sampling areas greater than 10,000 square feet an additional sample will be taken for each additional 5,000 square feet. |
| Thermal System Insulation | Minimum of 3 samples per homogeneous area of suspect material. |
| Miscellaneous | Minimum of 2 samples. |

• Prepare black and white AutoCAD site drawings (8 1/2" x 11"). Separate drawings showing positive asbestos materials and sample locations will be provided.

**Report Scope.**

Produce a Hazardous Phase I Site Investigation Report including the following information:

* Introduction
* Site Description
* Asbestos/Lead-Based Paint Findings
* Analysis of Site Background Information
* Conclusions
* Attachments
  - Site Location Maps
  - Site Photographs
  - Facility Floor Plans (including asbestos sampling/material locations)
  - Site Documentation (records search information)
  - Laboratory Results

SCANNED

- FEB-15-01 19:57 From:PATTON BOGGS LLP                    2024576316            T-581 P.14/24 Job-276

# CONSULTANT AGREEMENT

### Between

## THE GUAMTELEPHONE AUTHORITY

### And

## GOVERNMENT INTELLIGENCE AND PROPOSAL RESOURCES, INC.

This Agreement is made this 14th day of July, 2000 (the "Effective Date"), by and between the Guam Telephone Authority, an instrumentality of the Government of Guam ("GTA") and Government Intelligence and Proposal Resources, Inc., a Florida corporation ("GIPR").

**WHEREAS**, the Guam Legislature, through Public Law Nos. 24-36 and 25-126, has determined it is in the best interests of Guam to privatize GTA; and

**WHEREAS**, to assist in the process of such privatization, it was decided that GTA should retain the services of a Procurement Advisor; and

**WHEREAS**, the services to be rendered are of a special and temporary nature which has been determined to be in the best public interest to be performed under contract by professional personnel other than employees in the service of GTA; and

**WHEREAS**, GTA has reviewed all reasonable privatization options and approached to administering the privatization process, and GTA believes that the approach set forth in this contract is the most efficient and most likely to achieve the highest evaluation in terms of the interests of the Government of Guam and fair treatment of the employees of GTA; and

**WHEREAS**, GTA has based its decisions relating to privatization not only on the goal of securing the highest dollar value for GTA but also on the following significant priorities: (a) Employee welfare inclusive of salary grade, pensions and future economics beyond the five year window introduced in the bill of privatization; (b) attraction of new industries and growth to the island's economy to implement the Governor's vision of 2001; and (c) the transaction complexities associated with reconciling these priorities and implementing the privatization in a manner that best protects and promotes the successful future of Guam; and



EXHIBIT

WHEREAS, dealing with these privatization complexities, including the issues associated with the transfer of GTA assets to the private sector requires expertise in financial and legal transactions beyond the core capabilities of GTA, and GTA therefore requires assistance from specialists in the areas of Privatization to maximize competition and will serve the best interest of the employees and the people of Guam; and

WHEREAS, GTA issued Request for Proposal GTA-P1-00 (the "RFP") soliciting proposals from prospective procurement advisors and, after receipt and evaluation of proposals, determined to award a contract to GIPR to act as the Procurement Advisor for the privatization of GTA (the "Privatization"); and

WHEREAS, GIPR has submitted a statement of qualifications and an interest in providing such service; and

WHEREAS, the award of this contract to GIPR has been made pursuant to a finding by GTA that GIPR is the best qualified based upon evaluation factors set forth in the request for proposals, and that negotiations of compensation has been determined to be fair and reasonable; and

WHEREAS, GTA and GIPR through this Agreement desire to set out the negotiated terms and conditions under which GIPR will act as Procurement Advisor.

NOW, THEREFORE, for the mutual promises set forth herein and for other good and adequate consideration, the sufficiency of which is hereby acknowledged, GTA and GIPR, intending to be bound, agree as follows:

## I.    PURPOSE

The purpose of this Agreement is to procure for GTA the services of a Procurement Advisor in support of the Privatization.

## II.    PROCUREMENT ADVISOR SERVICES

2.1    Commencing as of the Effective Date, GIPR shall commence provision of services as Procurement Advisor and use its best efforts to carry out the tasks and provide the services described in Schedule A to this Agreement. GIPR shall provide all management, administrative, clerical and supervisory services required for the effective and efficient performance of this Agreement. GIPR shall provide reasonable cooperation to other agents and consultants of GTA that may be retained in connection with the GTA privatization.

- 2 -



2.2    GIPR shall report and be responsible to Vincent P. Arriola, General Manager, GTA and the Board of Directors of GTA.


### III.    CONTRACT TERM.

The terms of this agreement shall commence on the Effective Date, as defined above, and conclude at the earlier of the termination of this agreement by either party or the expiration of five (5) years following the completion of the Privatization.


### IV.    GIPR COMPENSATION FOR SERVICES

#### 4.1.    Fees Through Closing.

4.1.1. Upon closing of the transaction for the sale of the Government's Interest in GTA (or GTA's interest in its tangible and or intangible assets, GIPR will receive a fee (in addition to expenses reimbursed, as provided below) based on the price paid by the buyer(s) of such interests or property (the "Price") (such paying party or parties are referred to herein as the "Successful Offeror"). For purposes of this Agreement, "Closing" refers to the transfer of all or a substantial part of the Government's interest in GTA (or GTA's interests in a substantial portion of its assets) and payment of any part of the Price. Specifically, GIPR will receive in a lump sum a fee equal to the sum of Two and one-quarter percent (2.25%) of the first US$200 million of the Price, One and eight tenths percent (1.8%) of the next $100 million of the Price, and One and two-tenths percent (1.2%) of any amount over $300 million of the Price. Calculation of the Price will include value received by GTA (and the Government of Guam) calculated as the sum of cash payable by the Successful Offeror, the amount of any debt assumed by the Successful Offeror, the amount of any future cash investment commitment made in writing by the Successful Offeror (including the net present value of long term leases) and the fair market value of any non-cash compensation transferred to GTA, the Government of Guam or any Government-related entity in connection with the transaction. To the extent the Buyer is required to pay an "Administrative Fee" as part of its offer to cover GTA's Procurement Advisor and other transactions costs, such fee will not be included in the Price for purposes of calculation of the fee.

4.1.2. The fee set forth in 4.1.1 is based on the assumption that GTA or Government of Guam will sell all of its interest in GTA or the GTA assets, as applicable. In the event GTA (or the Government of Guam) reduces the scope of the plan by selling or transferring less than all of its interest in the assets and business of GTA (as applicable), or if the closing occurs after December 31, 2001, the amount of GIPR services will undoubtedly increase commensurately. Accordingly, if either of these events occurs, the fee for the first $200 million in Price shall be adjusted upward by one quarter of a percent (.25 %) of the Price for each 10 percent less than 100 percent sold; provided, however, except as set forth in Section 4.1.3. below, in no event shall the fee

- 3 -

FEB-15-01 19:58  From:PATTON BOGGS LLP                    2024578315              T-861  P.17/24  Job-175

for the first $200 million exceed the lesser of Three and one-quarter percent (3.25%) of the Price, or $4,600,000. If there occurs both a partial sale and a delay past December 31, 2001, the fee on the first $200 million of the Price shall be calculated as set out in this Section 4.1.2, but shall be not less than $3,000,000. In all events described in Sections 4.1.1. and 4.1.2., the fee on the remainder of the Price (the portion of the Price over $200 million) shall be as described in Section 4.1.1.

4.1.3. If (a) the scope of GIPR's services (including those of GIPR subcontractors) are terminated in whole or substantial part, or substantially modified prior to Closing, (b) less than 50% of GTA is transferred or (c) the privatization effort is effectively suspended for a period of more than 120 days, GIPR may elect prior to Closing to be paid for the value of the actual time devoted to this matter, as reflected in the monthly statements sent to GTA pursuant to Section 4.3 below (the "Alternative Fee Election"). Such Election shall be made by written notice to GTA. Even if GIPR makes an Alternative Fee Election, if there occurs, within the 12 month period following any such termination or substantial reduction or modification of GIPR services or suspension of the privatization, a transfer to a third party of 35 percent or more of the Government's beneficial interest in GTA, the fee payable as provided in Sections 4.1.1 and 4.1.2. (net of progress payments and any fees paid based on monthly statements) shall be due to GIPR at Closing.

4.1.4. Fees payable to GIPR as described in Sections 4.1.1 and 4.1.2 shall be paid in full (net of any progress payments received by GIPR) by the Successful Offeror at Closing directly into an account designated by GIPR. GTA agrees that the agreements with the Successful Offeror will include provisions requiring such payment at Closing. Fees payable based on GIPR monthly statements shall be paid within 30 days after the earlier of the termination of the GIPR representation or the termination of the RFP process.

### 4.2  Post-Closing Fees.

GIPR shall be paid for post-Closing audit and monitoring services on an hourly basis at the rates set forth in Schedule B hereto.

### 4.3.  Expenses.

GTA shall reimburse GIPR on a monthly basis within 30 days of receipt of the GIPR monthly statement detailing such expenses for reasonable and actual expenses incurred by GIPR and its subcontractors in connection with the provision of services, including such expenses as transportation, lodging, meals, communications and other out of pocket expenses in accordance with Government of Guam per diem policies.

FEB-15-01  19:53  From:PATTON BOGGS LLP                    2024576315                T-861  P.18/24  Job-275

#### 4.4.  Monthly Statements.

GIPR will provide GTA with monthly statements that set out a detailed listing of professional fees, by professional, and expenses. All expenses will be reimbursed to GIPR and post-Closing professional fees paid by GTA within 30 days of receipt of monthly statements. In the absence of an Alternative Fee Election, payment hereunder for professional fees for services through Closing will be made at Closing in accordance with the applicable portions of Sections 4.1.1 through 4.1.3. Professional billing rates shall be in accordance with the rates contained in Schedule B hereto and as subsequently approved in writing by GTA for subcontractor.

#### 4.5  Progress Payments.

Notwithstanding the foregoing provisions, commencing on September 1, 2000 and on the first day of each month thereafter until Closing, GTA shall pay to GIPR monthly progress payments against fees in the amount of $10,000 per month. Expenses will be reimbursed separately pursuant to monthly statements as provided in Section 4.3.

#### 4.6  Changes.

Subject to GSA Policy Office Regulations, an adjustment to the fee stated herein may be requested by the GIPR and authorized by GTA if the scope of work, time for completion, or services requested are increased over that agreed.

### V.  GIPR AGREES

5.1    That there shall be no employee benefits occurring from this Agreement, such as:

      5.1.1  Insurance coverage provided by the Government or GTA;

      5.1.2  Participation in the Government of Guam retirement system;

      5.1.3  Accumulation of vacation leave, or sick leave.

5.2    That there shall be no withholding of taxes by the Government or GTA.

5.3    That GIPR will, within thirty (30) days after any claim accrues arising out of or in connection with the performance of this Agreement, give written notice to GTA and the Attorney General of Guam of such claim, setting forth in detail all the facts relating thereto and the basis for such claim; and that GIPR will not institute any suit or action against GTA or the Government in any court or tribunal in any jurisdiction based on any such claim later than one (1) year after such filing. Any action or suit on any claim shall

not include any item or matter not specifically mentioned in the proof of claim above specified.  It is agreed that if such action or suit is instituted proof by GIPR of its compliance with the provisions of this paragraph shall be a condition precedent to any recovery; and that this paragraph does not constitute a waiver of any applicable statutes of limitations.   For purposes of this Agreement, a claim relating to non-payment hereunder shall be deemed to arise 60 days after GTA receipt of GIPR invoice that has not been paid.

## VI.    GTA OBLIGATIONS

In addition to the other specific obligations set forth in this Agreement, GTA agrees to cooperate with and provide GIPR (and its subcontractors) such access to information regarding the business of GTA and to GTA employees, consultants and facilities, as may be reasonably necessary in connection with GIPR performance of this Agreement.

## VII.    RESPONSIBILITY OF GIPR

The GIPR shall be responsible for the professional and technical accuracy of all work and materials created by GIPR and furnished under this contract.  GIPR shall, without additional cost to GTA, correct or revise all errors or deficiencies in their work. GTA review, approval, acceptance of, and payment of fees for services required under this Agreement, shall not be construed to operate as a waiver of any rights under this Agreement or of any cause of action arising out of GIPR's failure to perform and GIPR shall be and remain liable to the GTA for all costs of any kind which may be incurred by the GTA as a result of the GIPR's negligent performance of any of the services performed under this Agreement.

## VIII.    SUBCONTRACTORS

GTA acknowledges and accepts that GIPR may subcontract for legal and other services. Subject to the prior  written approval of GTA, GIPR may subcontract with other professionals in carrying out the tasks of the Procurement Advisor as contemplated hereunder. Payment for subcontractor's services shall be the responsibility of GIPR. Fees for such subcontractor's efforts will be billed through GIPR (and detailed in the monthly statements), and such fees shall be deemed included in the percentage fees paid under sections 4.1.1. through 4.1.3. above, or paid as part of GIPR monthly statements as provided in section 4.1.3., as applicable. Local Guam counsel relationships (including payment therefor) are the responsibility of GTA.

### IX.    COMPLIANCE WITH LAWS / INDEPENDENT CONTRACTOR

GIPR shall be required to comply with all Federal and territorial laws and ordinances applicable to the work. GIPR shall attach a copy of appropriate business license or a statement of exemption pursuant to 11 Guam Code Annotated Section 70106. In performance of this Agreement, GIPR and its subcontractors shall act as independent contractors and not as agents of GTA or the Government of Guam. Neither party to this Agreement has the authority to bind the other party to any third party contractual or other obligation.

### X.    ACCESS TO RECORDS AND OTHER REVIEW

GIPR, including its subcontractors, if any, shall maintain all books, documents, papers, accounting records and other evidence pertaining to costs incurred and to make such materials available at their respective offices at all reasonable times during the contract period and for three (3) years from the date of the final payment under the contract, for inspection by GTA or the Government of Guam. Each subcontract by GIPR pursuant to this agreement shall include a provision containing the conditions of this Section X and shall be provided to GTA.

### XI.    OWNERSHIP OF DOCUMENTS

All briefs, memoranda and other incidental GIPR work or materials furnished hereunder shall be and remain the property of the GTA, including all publication rights and copyright interests, and may be used by the GTA without any additional cost to the GTA.

### XII.    INDEMNIFICATION

Each party to this Agreement shall indemnify and hold harmless the other party from any and all loss, damage, expense or cost (including reasonable attorney's fees and disbursements attendant thereto) arising out of or in any way connected with the indemnifying party's breach of any term of this Agreement. Each party further agrees to indemnify and hold the other party harmless against any and all liability, claims, and costs of whatever kind and nature for injury to or death of any person or persons and for loss or damage to any property occurring in connection with or in any way under the terms of this contract, to the extent resulting in whole or in part from the negligent act or omissions of the indemnifying party.

- 7 -

## XIII.  COVENANT AGAINST CONTINGENT FEES

GIPR warrants that it has not employed any person to solicit or secure any resultant contract upon agreement for a commission, percentage, brokerage or contingent fee.  Breach of this covenant gives GTA the right to terminate this agreement, or in its discretion, to deduct from the contract price or consideration the amount of such commission, brokerage or contingent fees.  This warranty shall not apply to commissions payable by GIPR upon contracts or sales secured or made through bona fide established commercial or selling agencies maintained by GIPR for the purpose of securing business.

## XIV.  DISPUTES

### 14.1  Enforceability.

GTA, as an agency of the Government of Guam acknowledge that this engagement agreement is enforceable against GTA and its successors and assigns in accordance with its terms, as contemplated under 5 Guam Code Annotated, Section 6106 .  GTA acknowledges that GIPR's subcontractor, if any, is a third party beneficiaries of this Agreement to the extent of its rights to fees for services to GTA through GIPR. Accordingly, subcontractor shall have the right to enforce GIPR's rights hereunder  to the extent such rights relate to services provided by such subcontractor and GIPR fails to act to so enforce those rights after written demand from the subcontractor .

### 14.2  Arbitration.

The parties will endeavor to settle amicably by mutual discussions any disputes, differences, or claims whatsoever related to this Agreement.  Failing such amicable settlement, any controversy, claim, or dispute arising under or relating to this Agreement, including the existence, validity, interpretation, performance, termination or breach thereof, shall finally be settled by arbitration in accordance with the Arbitration Rules of the American Arbitration Association ("AAA").  There will be one (1) jointly appointed arbitrator (the "Arbitrator") The language of the arbitration shall be English and the hearing will be held in Guam.  The Arbitration Tribunal will not have the authority to award punitive damages to either party. This Agreement will be enforceable, and any arbitration award will be final, and judgment thereon may be entered in any court of competent jurisdiction. Notwithstanding the foregoing, claims for preliminary injunctive relief, other pre-judgment remedies, and claims for GTA's failure to pay GIPR in accordance with this Agreement may be brought in the Superior Court of Guam.

**14.3  Limitation of Liability.**  Neither party to this Agreement shall be liable to the other party for indirect, consequential, expectancy or punitive damages.

## XV.  TERMINATION

Either of the parties hereto, may, by written notice to the other, terminate this Agreement in whole or in part at any time, either for convenience or default. In the case of a termination for default, either party may terminate this Agreement if:  (i) the other party breaches any material term or condition of this Agreement and fails to cure such breach within thirty (30) days after receipt of written notice of the same, except in the case of failure to pay fees when due, which must be cured within five (5) days after receipt of written notice from GIPR.  Upon termination for any reason, all briefs, reports, summaries, completed work and work in progress; and such other information and materials as may have been accumulated by GIPR in performing this Agreement shall, upon payment by GTA to GIPR of amounts owing hereunder, become the property of and be delivered to GTA, in the manner and to the extent determined by the GTA. Except as otherwise provided in this Agreement, if the Agreement is terminated by GIPR, or by GTA for cause, prior to its completion, GTA will pay GIPR the reasonable value for services (as determined from GIPR monthly statements and application of the rates set forth in Schedule B hereto) performed by GIPR or its subcontractors in accordance with the terms of this Agreement and reasonable expenses associated therewith.

## XVI.  SCOPE OF AGREEMENT

This Agreement supersedes any and all other prior agreements, either oral or in writing, between the parties hereto with respect to GTA retaining GIPR and contains all of the covenants and agreements between the parties with respect to such relationship. Each party to this Agreement acknowledges that no representation, inducements, promises or agreements, orally or otherwise, have been made by any party, or anyone acting on behalf of any party, which are not embodied herein, and that no other agreement, statement, or promise not contained in this agreement shall be valid or binding. Any modification of this Agreement will be effective only if it is in writing signed by the party to be charged.  For the purposes of this paragraph and of the entire Agreement the signature of the General Manager of GTA is the only signature that will bind GTA, and the signature of the Governor of Guam is the only signature that will bind the Government.

## XVII.  MISCELLANEOUS PROVISIONS

**17.1  Severability.** If any provision of this agreement shall be deemed by a court of competent jurisdiction to be invalid, then such provision shall be deemed stricken from the agreement and the agreement shall be enforced according to its valid and subsisting terms and provisions.

**17.2  Cumulation of Remedies.**  All remedies available to either party for breach or violation of this Agreement are cumulative and may be exercised concurrently or separately, and the exercise of any one remedy shall not be deemed an election of such remedy to the exclusion of other remedies. The parties hereto agree that irreparable damage would occur in the event any provision of this Agreement was not performed in accordance with the terms hereof and that the parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy at law or in equity.

**17.3  Waiver.** A waiver, express or implied, by either party of any default by the other in the observance and performance of any of the covenants or duties set forth herein shall not constitute or be construed as a waiver of any subsequent or other default.

**17.4  Assignment.** Neither party shall assign the Agreement in whole or in part without the written consent of the other party; except that, GIPR may assign sums due hereunder to a third party.

**17.5  Notices.** Any notice or other communication hereunder shall be in writing and will be deemed to have been validly delivered by facsimile or courier and confirmed by registered or certified first class mail, return receipt requested, postage prepaid, addressed to the receiving party at the address set forth below its name or at such other address as such party may hereafter designate in writing to the other party.

If to GIPR:

GIPR, Inc.
47097 Glenaire Court
Sterling, VA 20165
Attention: Christopher Stahl

Fax 1-703-421-0143

If to GTA:

Guam Telephone Authority
624 N. Marine Drive
Tamuning, Guam 96911
Attention: Vincent Arriola, General Manager
Fax 671-649-4821

- 10 -

**17.6  Headings.**  The headings contained herein are for convenience only and shall not control the interpretation of any term or condition hereof.

**17.7  Entire Agreement.**  This Agreement constitutes the entire agreement between the parties and supercedes all prior written and oral and all contemporaneous oral agreements or understandings between the parties with respect to the subject matter hereof.  Except as otherwise provided herein, no variation of the terms and conditions of this Agreement shall be effective unless in writing signed by both parties hereto.

**17.8  Governing Law.**  This Agreement and the transactions contemplated hereby shall be governed by and construed and interpreted in accordance with the laws of Guam.

**17.9  Effectiveness.**  This Agreement shall become valid and in full force and effect when it is duly executed by each party hereto.

**17.10  Counterparts.**  This Agreement may be executed in one (1) or more counterparts.  Each full counterpart shall be deemed an original, but all such counterparts together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the day and year first written above.

GOVERNMENT INTELLIGENCE AND PROPOSAL RESOURCES, INC.

By: _____

Title:  President

GUAM TELEPHONE AUTHORITY

By: _____

Title:  General Manager

- 11 -

## AMERICAN ARBITRATION ASSOCIATION
### CHECKLIST FOR CONFLICTS

In the Matter of the Arbitration between:

Re: 74 192 00039 08 LOPE
  DMJM & Harris, Inc.
  VS
  Government Intelligence & Proposal Resources, Inc.
  and
  The Guam Telephone Authority (GTA)

CASE MANAGER: Lorena P. Garcia
DATE: January 18, 2008

To avoid the possibility of a last-minute disclosure and/or disqualification of the arbitrator pursuant to the rules, we must advise the arbitrator of the names of all persons, firms, companies or other entities involved in this matter. Please list below all interested parties in this case, including, but not limited to, witnesses, consultants, and attorneys. In order to avoid conflicts of interest, parties are requested to also list subsidiary and other related entities. This form will only be used as a list for conflicts, not a preliminary or final witness list. Please note that the AAA will not divulge this information to the opposing party, and the parties are not required to exchange this list. This form will, however, be submitted to the arbitrator, together with the filing papers. You should be aware that arbitrators will need to divulge any relevant information in order to make appropriate and necessary disclosures in accordance with the applicable arbitration rules.

| | NAME | AFFILIATION | ADDRESS |
|---|---|---|---|
| 1. | Sidney B. Friedman Attorney | Weinstock, Friedman & Friedman, P.A. | 4 Reservoir Circle Baltimore, MD 21208 |
| 2. | Rosemary E. Allulis Attorney | Weinstock, Friedman & Friedman, P.A. | 4 Reservoir Circle Baltimore, MD 21208 |
| 3. | Howard Gale, Witness | DMJM + Harris, Inc. | 333 Ludlow Street Stamford, CT 06902 |

4.  Other corporate witnesses to be determined

5.  See attached list for a list of AECOM Consult, Inc., Affiliates of which Claimant is a member.

1

DATED: 1/30/08        PARTY: __DMJM + Harris, Inc.__
                                                  Please Print

# Listing of AECOM Consult, Inc. Affiliates

Below are the names and business addresses of the firm's affiliates.

**AECOM Aviation Group**
Address: 555 South Flower Street, Los Angeles, CA 90071

**AECOM Enterprises, Inc.**
Address: 515 South Flower Street, 4h Floor, Los Angeles, CA 90071

**AECOM Global Group Ltd.**
Address: 9 King Street, 5th Floor, London EC24 8FA UK

**Cansult Maunsell Middle East**
Address: P.O. Box 43266, Abu Dhabi, United Arab Emirates

**Consoer Townsend Envirodyne Engineers, Inc.**
303 East Wacker Drive, Chicago, IL 60601-5276

**DMJM Aviation**
Address: 2202 North West Shore Blvd., Tampa, FL 33607

**DMJM+HARRIS, Inc.**
Address: 606 Third Avenue, New York, NY 10158

**DMJM H&N, Inc.**
Address: 999 Town & Country Road, Orange, CA 92868

**ENSR**
Address: 2 Technology Park Drive, Westford, MA 01886

**EDAW**
·Address: 150 Chestnut Street, San Francisco, CA 94111

**Faber Maunsell**
Address: Malborough House, Upper Marlborough Road, St. Albans, Herfordshire, AL1 3 UT, United Kingdom

**Hayes Seay Mattern & Mattern, Inc.**
Address: 1315 Franklin Road, SW, Roanoke, VA 24034

**Maunsell Australia & Asia**
Address: 12 Cribb Street, Milton Old 4064 (P.O. Box 1823), Austrailia

**Mausell Consultants Asia Ltd.**
Address: Yue Hwa International Bldg., 14th Floor, 1 Kowloon Park Drive, Kowloon, Hong Kong

**Maunsell House**
Address: 160 Croydon Road, Beckenham, Kent BR34DE, United Kingdom

**The McClier Corporation**
Address: 401 East Illinois Street, Chicago, IL 6011

**Metcalf & Eddy, Inc.**
Address: 701 Edgewater Drive, Wakefield, MA 01880

**Oscar Faber**
Address: 42 Colinton Road, Edinburgh, EH105BT

**P&D Consultants, Inc.**
Address: 999 Town & Country Road, Suite 400, Orange, CA 92868

**Planning and Development Collaborative International, Inc.**
Address: 1025 Thomas Jefferson St. North West, Washington, DC 20007

**STS Acquisition Co., d/b/a STA Consultants Ltd.**
Address: 750 Corporate Woods Parkway, Vernon Hills IL 60061

**Turner, Collie & Braden, Inc.**
Address: 5757 Woodway Drive, Houston, TX 77057

**UMA Group Ltd.**
Address: 1700-1066 West Hastings Street, Vancouver, B.C. Canada V6L 1S7

## BEFORE THE AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| DMJM + HARRIS, INC. | * |
| | * |
| Claimant | * |
| | * |
| v. | * |
| | * |
| GOVERNMENT INTELLIGENCE & | * |
| PROPOSAL RESOURCES, INC., et al | * |
| | * |
| Respondents | *    Case No.: 74 192 00039 08 LOPE |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## RESPONSE TO OBJECTION TO JURISDICTION OF ARBITRATOR AND TO LOCALE OF HEARING REQUESTED BY CLAIMANT

NOW COMES, DMJM + Harris, Inc.[1], Claimant, by and through its attorneys, and

herein responds to the Objection to Jurisdiction of Arbitrator and to Locale of Hearing

Requested by Claimant, filed by Guam Telephone Authority and Interim Transition

Coordinating Committee, and states as follows:

### I. Introduction

Pursuant to a services agreement between DMJM + Harris, Inc. (hereinafter

"DMJM") and  Government Intelligence & Proposal Resources, Inc. (hereinafter "GIPR"),

DMJM performed various services as a subcontractor of GIPR, for the benefit of the

---

[1]        At the time the parties entered into the contract which is the subject of this
dispute, and which was attached to the Demand for Arbitration as Exhibit 1, Claimant
was formerly known as Frederic R. Harris, Inc.  Subsequently, Frederic R. Harris, Inc.
changed its name through a merger with a sister corporation, and is now known as DMJM
+ Harris, Inc., as successor to Frederic R. Harris, Inc.

1

Guam Telephone Authority (hereinafter "GTA"). GIPR had a contract with GTA to provide assistance in its efforts to privatize the GTA. Pursuant to the contract between GIPR and GTA, DMJM was a recognized subcontractor, with the right to pursue payment for services rendered. Recently, DMJM has been informed that following the privatization, the GTA established the Interim Transition Coordinating Committee (hereinafter "ITCC") to address any outstanding disputes involving the GTA. Given this, DMJM has made ITCC a party to this action.

In accordance with the contracts and the corresponding scope of work, DMJM performed environmental due diligence for properties owned by GTA, and incurred both professional fees for services rendered, as well as actual costs and expenses associated with its work. All work was completed at the request of GIPR and for the benefit of GTA, and was performed in accordance with the contracts between the parties. DMJM was to be paid following the completion of the GTA privatization, however, DMJM has never been fully paid.

GIPR did pay $40,000.00 to DMJM, however, this amount was not the total amount due, leaving a balance due and owing of $79,596.82, plus interest and attorneys fees, for a total claim of $126,751.43. DMJM has attempted to resolve this issue with both GIPR and GTA, and more recently with the ITCC, however, GIPR contends that GTA was to pay DMJM directly after its contract was assumed by a third party. GTA has refused to provide any documentation to show whether GIPR submitted the DMJM invoices to GTA for payment, or whether GTA paid GIPR. Requests to the ITCC have not been successful either, nor has correspondence with the parties' counsel.

2

## II. The AAA Has Subject Matter Jurisdiction Over This Dispute

### A. The GTA and the ITCC are contractually bound to arbitrate

An agreement to arbitrate disputes is a matter of contract interpretation. *Guam Housing and Urban Renewal Authority v. Pacific Superior Ent. Corp.*, 2004 WL 2939259 *7 (2004 Guam 22)  The basic principles of contract formation apply when determining whether the parties to a contract agreed to arbitrate their disputes. *Guam Housing and Urban Renewal Authority v. Pacific Superior Ent. Corp.*, 2004 WL 2939259 *6 (2004 Guam 22); *Gov't of Guam v. Pacificare Health Ins. Co. of Micronesia, Inc.*, 2004 WL 2492881 *7 (2004 Guam 17).  "In interpreting a written contract, "the intent of the parties is ascertained from the writing alone."" *Guam Housing and Urban Renewal Authority v. Pacific Superior Ent. Corp.*, 2004 WL 2939259 *6 (2004 Guam 22) (quoting, *Ronquillo v. Korea Auto., Fire & Marine Ins. Co.*, 2001 Guam 25, ¶ 10).  It is well-settled in the Territory of Guam, that with respect to the interpretation of a contractual agreement to arbitrate disputes, "several presumptions apply." *Guam Housing and Urban Renewal Authority* at *6.  Critical to this inquiry is the strong policy <u>favoring</u> arbitration, with "any doubts concerning the scope of arbitrable issues [to] be resolved in favor of arbitration." *Id.* (quoting, *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir.1999)); *see also, Gov't of Guam v. Pacificare Health Ins. Co. of Micronesia, Inc.*, 2004 WL 2492881 at *8.  Furthermore, "any doubt as to the arbitrator's jurisdiction is resolved in favor of arbitration," with any ambiguities in the contract language "to be construed in favor of arbitration." *Guam Housing and Urban Renewal Authority* at *6; *see also, Gov't of Guam v. Pacificare Health Ins. Co. of Micronesia, Inc.*, 2004 WL 2492881

3

at *8.

    As stated above, there are two contracts at issue. First, is the original contract between GIPR and DMJM, and then is the contract between GIPR and GTA, which upon privatization presumably now falls within the purview of ITCC. Focusing on the contract between GIPR and GTA for the purposes of this argument, the plain language of the contract clearly indicates that GTA acknowledged and accepted that GIPR could subcontract for services, which includes DMJM. *See* Exhibit 2 at VIII. Additionally, the plain language of the contract clearly indicates that GTA acknowledged that GIPR's subcontractors are third party beneficiaries of the contract "to the extent of its rights to fees for services to GTA through GIPR." *See* Exhibit 2 at XIV. 14.1. Remedies available under the contract are "cumulative and may be exercised concurrently or separately...." *See* Exhibit 2 at XVII. 17.2. Therefore, regarding dispute resolution, there are two possible avenues set forth in the contract. One, is to file a lawsuit under the Government Claims Act, and the second, is to proceed to Arbitration. *See* Exhibit 2 at XIV. There is no requirement that an aggrieved party first file a lawsuit; indeed, that is an elective remedy. *See* Exhibit 2 at XIV. 14.2. "[A]nd claims for GTA's failure to pay...may be brought in the Superior Court of Guam." *Id.* The only prerequisite to demanding arbitration is for the parties to attempt to resolve any disputes by "mutual discussions." There can be no question that DMJM has been attempting to resolve this matter through "mutual discussions," but to no avail, for well over a year and possibly longer.

    Because GTA contemplated DMJM as a third party beneficiary and subcontractor in its contract with GIPR, DMJM has standing to pursue its claims against GTA and ITCC

4

under the terms of that contract. As such, DMJM has elected to resolve this dispute by pursuing arbitration as opposed to filing a lawsuit in the Superior Court of Guam. *See* Exhibit 2 at XIV. 14.2 and XVII. at 17.2. Based upon both policy considerations, and the language contained in the contract, this arbitration should be permitted to continue. DMJM has standing, GTA and ITCC are contractually bound to arbitrate, and the contract must be construed in favor of arbitration. *Guam Housing and Urban Renewal Authority* at *6; *see also, Gov't of Guam v. Pacificare Health Ins. Co. of Micronesia, Inc.*, 2004 WL 2492881 at *8.

## B. The GTA and the ITCC contractually waived sovereign immunity

In their joint brief, GTA and ITCC contend that the AAA lacks subject matter jurisdiction over this matter. *See* Objection to Jurisdiction at 2. In support, GTA and ITCC claim that as agencies of the Government of Guam, they are protected by the doctrine of sovereign immunity. *Id.* This contention lacks merit and should be disregarded. Much of their discussion deals with the Government of Guam being subject to suit only upon express waiver. *See* Objection to Jurisdiction at 2. However, this is not a lawsuit. This is an arbitration proceeding, the terms of which were set forth by GTA in its own contract. As already discussed, it is well-settled under Guam precedent that there is a strong policy in favor of enforcing arbitration agreements, with any ambiguities in the agreement to be resolved in favor of arbitration. *Guam Housing and Urban Renewal Authority* at *6; *see also, Gov't of Guam v. Pacificare Health Ins. Co. of Micronesia, Inc.*, 2004 WL 2492881 at *8. Furthermore, arbitration clauses are contractual obligations

5

which are binding upon governments just as they are binding upon private entities. *Hardie v. United States*, 367 F.3d 1288, 1291 (Fed. Cir. 2004). "The Government first contends that it has not waived its sovereign immunity, and therefore it cannot be forced to engage in the arbitration process contemplated in the Arrangement. We see the Government's reliance on the doctrine of sovereign immunity as misplaced, and in these circumstances it borders on frivolous. The Government prepared the terms of the [agreement]...the Government now purports not to be bound by its own words...." *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319-20 (2001). This same issue originally arose in *Gov't of Guam v. Pacificare Health Ins. Co. of Micronesia*, and although the Government of Guam eventually dropped the issue, the court did address Guam's attempt to raise sovereign immunity as a defense under similar circumstances. "...We nonetheless find the sovereign immunity argument unpersuasive. By entering into an agreement referring disputes to arbitration, the Government is bound by the provisions of such agreement as any other party would, and claim of sovereign immunity is unavailing to prevent enforcement of the agreement." *Gov't of Guam v. Pacificare Health Ins. Co. of Micronesia, Inc.*, 2004 WL 2492881 at FN2, *citing*, *Hardie v. United States*, 367 F.3d 1288, 1291 (Fed. Cir. 2004). Therefore, as a defense to DMJM's demand for arbitration, GTA's and ITCC's claim of sovereign immunity is not viable or even applicable.

Furthermore, there is no administrative remedy that DMJM is required to exhaust prior to proceeding to arbitration. Under the terms of the agreement, the only condition precedent to arbitration is that the parties were to have attempted to amicably resolve the dispute. DMJM has, in good faith, attempted to do so for some time. After it became

6

patently clear to DMJM that GTA and ITCC had no intentions of making payment, or even informing DMJM whether GIPR had been paid for DMJM's services, DMJM had the choice of pursuing either court litigation, or arbitration. DMJM chose arbitration. While the Government Claims Act does require various notice procedures prior to filing a lawsuit, it is DMJM's position that the Government Claims Act does not even apply to this arbitration because this is not a lawsuit. 5 G.C.A. § 6102; § 6108. The entire Government Claims Act only applies to lawsuits, and there is nothing in the Act pertaining to arbitration. 5 G.C.A. § 6101, *et seq.* As a separate contractual remedy, therefore, the only thing that DMJM was required to do before demanding arbitration was to attempt to resolve the dispute, which it did. Likewise, because the Government Claims Act is not applicable to this arbitration, DMJM's claim for attorneys fees and interest cannot be barred. The arbitration clause only prohibits punitive damages, which DMJM is not claiming. *See* Exhibit 2 at XIV. 14.2.

## C. The contract between DMJM and GIPR provides for arbitration in Washington, D.C.

The contract between DMJM and GIPR sets the location for an arbitration hearing in Washington, D.C. *See* Exhibit 1 at 9.9.1. DMJM concedes that the contract between GIPR and GTA sets the location for an arbitration hearing in Guam. *See* Exhibit 2 at XIV. 14.2. In this regard, for the convenience of all parties and witnesses, DMJM proposes that the hearing be conducted via teleconference or video conference. This is not a complicated dispute that will require numerous exhibits and witnesses. The issue is only a

7

matter of payment for services rendered.

### III.  Conclusion

Resolution of this matter should be through arbitration.  The parties contractually agreed to arbitration, and are bound by the terms of the contract.  The doctrine of sovereign immunity is not applicable as a defense to arbitration.  Likewise, the Government Claims Act is not applicable to this proceeding because the Act only applies to lawsuits.  DMJM has standing to bring this matter before the AAA, and the AAA has jurisdiction to resolve this dispute.  As such, it should proceed.


Sidney S. Friedman
Rosemary E. Allulis

Weinstock, Friedman & Friedman, P.A.
4 Reservoir Circle
Baltimore, Maryland 21208
410-559-9000
410-559-9009 Fax
ssf@weinstocklegal.com

Attorneys for DMJM + Harris, Inc., Claimant

8

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this ___6 TH___ day of March, 2008, a copy of the foregoing was served upon the following in the manner indicated:

**Via Facsimile Only:**

Sharan Malhi
Case Manager
Supe Gonzalez-Baca, Supervisor
Lorena P. Garcia, Senior Case Manager
American Arbitration Association
6795 North Palm Avenue, 2nd Floor
Fresno, California 93704
**Fax: 559-490-1919**

Delia S. Lujan
Lujan Aguigui & Perez, LLP
DNA Building, suite 300
238 Archbishop Flores Street
Hagatna, Guam 96910
**Fax: 671-477-5297**
Attorneys for Guam Telephone Authority
and Interim Transition Coordinating
Committee

Terrence M. Brooks, P.C.
Angela Flores Building, Suite 101
247 Martyr Street
Hagatna, Guam 96910-5190
**Fax: 671-477-5790**
Attorneys for TeleGuam Holding, LLC

**Via U.S. Mail Only:**

Government Intelligence and Proposal
Resources, Inc.
Attn: Christopher Stahl
47097 Glenaire Court
Sterling, Virginia 20165

Rosemary E. Allulis

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**(Civil Division)**

| | |
|---|---|
| **DMJM + HARRIS, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No.:  1:08-cv00094-RJL** |
| ) | |
| **GOVERNMENT INTELLIGENCE AND** ) | |
| **PROPOSAL RESOURCES, INC., et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

Upon consideration of defendant TeleGuam Holdings, LLC's ("TeleGuam" or "defendant") Motion To Dismiss, and any opposition thereto, it is this _____ day of _____, 2008, hereby

ORDERED, that the Motion To Dismiss be, and the same hereby is, GRANTED; and it is further

ORDERED, that plaintiff DMJM + Harris, Inc.'s Complaint be DISMISSED as to defendant TeleGuam.

_____
Judge, District of Columbia District Court

Copies to:

David C. Tobin, Esq.
Tobin, O'Connor & Ewing
5335 Wisconsin Avenue, N.W., Suite 700
Washington, D.C.  20015

Sidney S. Friedman, Esq.
Weinstock, Friedman & Friedman, P.A.
4 Reservoir Circle
Baltimore, Maryland  21208